STATE EX REL. BENJAMIN ROBERT GRAY v.
RALPH H. TAHASH.

157 N. W. (2d) 81.

March 8, 1968—No. 40,480.

*C. Paul Jones,* State Public Defender, *Murray L. Galinson,* Assistant State Public Defender, and *Rosalie Wahl,* for appellant.

*Douglas M. Head,* Attorney General, and *David J. Byron* and *Alan M. Schlesinger,* Special Assistant Attorneys General, for respondent, warden of State Prison.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Appeal from a denial of a writ of habeas corpus after an evidentiary hearing.

On January 16, 1963, petitioner was convicted upon a plea of guilty of murder in the second degree reduced by information following an indictment charging murder in the first degree. On December 21, 1965, appearing pro se, he filed a petition for a writ of habeas corpus alleging in substance that, contrary to constitutional requirements, he was denied effective aid and representation by the Hennepin County public defender, Lewis Lohmann, his court-appointed counsel, and that his plea of guilty was improperly accepted by the court because he did not know that an intent to kill was an essential

element of the crime to which he pled guilty. On April 18, 1966, represented by counsel appointed by this court,[1] he was given an evidentiary hearing,[2] at which time he alone submitted oral testimony. The court made findings, including:

"That petitioner was not denied the effective assistance of counsel and was given effective assistance of competent counsel at every stage of the proceedings.

\* \* \* \* \*

"That the trial court properly received the plea of guilty by defendant to the charge of second degree murder and one prior conviction after being fully advised in the matter by defendant and his counsel."

We have examined the record with care and conclude that the evidence adequately supports the court's finding since there appears no factual support for petitioner's claims.

This strikingly appears when his testimony before the habeas court is considered in connection with all the files and records available to us, including the testimony he and witnesses to the offense charged gave before the sentencing court when his plea of guilty was tendered and accepted. He does not deny that in the early morning hours of August 19, 1962, armed with a loaded revolver, he shot and killed his girl friend and wounded her mother, and that this occurred at the duplex where they resided. After he tendered his plea and with the aid of his counsel, he testified that, because he was intoxicated, he could remember only going to the victim's residence. His testimony indicates he did not intend to kill her but that the pistol he was carrying discharged after she attempted to take it from him. He said that "she wanted to see it \* \* \* so I took it out \* \* \* and she grabbed the gun and tried — I guess maybe she was trying to get it away from me." After this testimony was heard, the prosecution called the husband and wife who resided in the upstairs apartment of the duplex, whom the victim was visiting immediately before

---

[1] On this appeal he is represented by the state public defender.

[2] See, State ex rel. Holm v. Tahash, 272 Minn. 466, 139 N. W. (2d) 161.

the shooting. Both described in detail how petitioner forced his way into their apartment brandishing a pistol and, holding the pistol to the husband's "stomach," threatened to "kill" him if he moved. Then, accusing the victim of being rude to him, he approached her and, with gun in hand, "slapped" her, and just before leaving the apartment said, "I'm going to kill you," and again, "Well, I ain't got no reason not to kill you." A minute after petitioner and the victim "went downstairs," both witnesses heard two shots fired in rapid succession. Without further detailing the evidence, it appears that the victim was found dead in the hallway.

After the witnesses completed their testimony, petitioner, when questioned by the court, testified:

"Q. And you heard their testimony as to what occurred that night?

"A. Yes.

"Q. Are you satisfied that that is what happened?

"A. Yes, sir.

"Q. And you know that you had the gun when you went there, did you?

"A. Yes.

"Q. And the gun was loaded?

"A. Yes, sir.

"Q. And when the shots occurred, the gun was in your hand?

"A. Yes.

"Q. Is that correct?

"A. Yes, sir.

"Q. And are you satisfied you shot Patricia?

"A. Yes.

"Q. Did you shoot her?

"A. Yes, as far as I know I did.

"Q. All right. And are you guilty of murder in the second degree?

"A. Yes, sir, I guess so. I don't know all the — you know — but I guess so.

"Q. Are you satisfied that you are guilty of murder in the second degree?

"A. Yes.

"Q. Were you mad at her when you went over there?

"A. Not as I remember. I don't believe so. I don't know. I don't really know.

"Q. Now, you are entitled to a trial, you know that?

"A. Yeah. I don't want to bother with all that.

"Q. It isn't a matter of bothering, it's a matter of whether or not you are satisfied in your own mind, convinced that you are guilty of murder in the second degree.

"A. Yes.

"Q. Are you?

"A. Yes."

At the habeas hearing, petitioner again confirmed that the testimony of the witnesses was an accurate recital of what in fact occurred.

In spite of petitioner's hazy recollection of his conduct, in our opinion the record does supply an adequate factual basis to justify acceptance of petitioner's plea, his conviction, and the findings of the habeas court. There is clearly sufficient evidence to establish the essential element of "a design to effect the death of the person killed" [3] and that petitioner in fact committed an offense at least as serious as the one to which he willingly and voluntarily pled guilty. The record reveals the reasons which likely prompted a reduction in the charge and demonstrated the effectiveness of the means employed by defense counsel to protect petitioner from prosecution and possible conviction of first-degree murder and aggravated assault. It also provided the court with sufficient knowledge of the circumstances to assess petitioner's competence, his understanding of the charge, and his willingness to plead guilty. Since the factual details of the crime and the weight of petitioner's own testimony do not suggest innocence but, rather, are consistent with guilt, his plea was properly accepted. State ex rel. Crossley v. Tahash, 263 Minn. 299, 116 N. W. (2d) 666.

As already indicated, petitioner's claim of ineffective assistance of

---

[3] Minn. St. 1961, § 619.08.

counsel is without merit, for his testimony does not establish a prima facie case. State ex rel. Gray v. Tahash, 279 Minn. 248, 156 N. W. (2d) 228. Moreover, the record read as a whole does not support an inference that he pled guilty without sufficient knowledge of the charge or that he would not have pled guilty had he realized that an intent to kill was an essential element. Even though it is not specifically shown that he was informed of the essential elements of the charge, the record refutes his claim of inadequate representation and could support no other conclusion than that he was fully advised of his fundamental rights and was skillfully and adequately represented by counsel.

Affirmed.