OPINION
DIETZEN, Justice.
Appellant Clarence Bruce Beaulieu pleaded guilty and was convicted of first-degree burglary. The district court imposed a 57-month sentence, which was stayed, and Beaulieu was placed on probation. Two years later, Beaulieu appeared before the district court regarding alleged probation violations. After Beaulieu personally admitted the probation violations, the court revoked Beaulieu’s probation. On appeal, Beaulieu argued for the first time that the district court committed reversible error when it violated a claimed constitutional right “to be advised” of his due process rights under Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and when it failed to provide him the rights advisory required by Minn. R.Crim. P. 27.04. Because we conclude that Beaulieu’s arguments lack merit, we affirm.
In May 2010, the State charged Beaulieu with first-degree burglary, Minn.Stat. § 609.582, subd. 1(c) (2014), alleging that he entered the apartment of his ex-girlfriend and-assaulted her. Pursuant to a plea agreement, Beaulieu pleaded guilty to first-degree burglary. In accordance with *277 the plea agreement, the district court stayed execution of a 57-month sentence and placed Beaulieu on probation for 20 years. Beaulieu’s sentence reflected a downward dispositional departure. As conditions of his probation, Beaulieu was required to fully cooperate with his probation agent and complete periodic chemical dependency assessments.
In September 2010, Beaulieu’s probation agent filed a probation-violation report alleging that Beaulieu had failed to keep necessary appointments and comply with the conditions of his probation. At the first-appearance hearing, the district court asked Beaulieu’s counsel: “[H]ave you had a chance ... to go through that claimed probation violation with [Beaulieu]?” Beaulieu’s counsel responded that he had, and that his client intended to admit the violation. The court asked Beaulieu if he admitted the probation violation. Beaulieu answered: “Admit it, your Honor.” At the disposition hearing, the court followed the recommendation of Beaulieu’s probation agent and continued Beaulieu’s probation.
Two years later, Beaulieu’s probation officer filed a second probation-violation report. The report alleged that Beaulieu failed to “keep all appointments, be truthful, and comply with all instructions of the probation agent,” and failed to “show proof of completing a chemical dependency assessment.” At the first-appearance hearing, Beaulieu’s counsel informed the court that he had reviewed the allegations with Beaulieu. Counsel then made a request for an admit/deny hearing, which the court granted.[1] At the admit/deny hearing, Beaulieu’s counsel stated: ‘Tour Honor, [Beaulieu would] admit the allegations.” When asked if he admitted the alleged probation violations, Beaulieu responded: “Yes, I do, your Honor.” The court accepted the admissions and scheduled a disposition hearing. At the disposition hearing, the court revoked Beaulieu’s probation and executed his 57-month sentence.
The district court failed to provide Beau-lieu with the rights advisory required by Minn. R.Crim. P. 27.04, which informs a probationer of his or her right to:
a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;
b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;
c. disclosure of all evidence used to support revocation and of official records relevant to revocation;
d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;
e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation;
f. appeal any decision to revoke probation.
Minn. R.Crim. P. 27.04, subd. 2(l)(c). The rights set forth in Rule 27.04, subdivision 2, reflect the rights articulated in Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and its progeny. In Morrissey, the Court explained that in the context of a parole revocation, that certain minimum require- *278 merits -of due process were required. 408 U.S. at 484, 92 S.Ct. 2593. Unlike the rule governing the waiver of counsel, Minn. R.Crim. P. 5.04, subd. 1, and the rule governing the waiver of a jury trial, Minn. R.Crim. P. 26.01, subd. 1(2), Rule 27.04 does not require a defendant to personally waive his or her Morrissey rights in writing or on the record in open court.
Before the court of appeals, Beaulieu argued for the first time that the district court violated an alleged constitutional right “to be advised” of his Morrissey due process rights prior to accepting his admission of the probation violations, and that he did hot knowingly and intelligently waive his Morrissey rights. The court rejected both arguments, concluding in part that under the circumstances of Beau-lieu’s case, one could assume he “was adequately informed of his rights because he was represented by counsel.” State v. Beaulieu, No. A12-2192, 2013 WL 4779046, at *4 (Minn.App. Sept. 9, 2013) (citing State v. Lorentz, 276 N.W.2d 37, 38 (Minn.1979) (explaining that a presumption arose that the defendants had been fully advised of their rights when the record revealed that both defendants had discussed their cases with their respective attorneys)). Consequently, the court affirmed the district court’s revocation of Beaulieu’s probation.
On appeal, Beaulieu argues that (1) the district court erred by violating an alleged constitutional right “to be advised” of his due process rights under Morrissey, 408 U.S. at 488-89, 92 S.Ct. 2593; and (2) the district court erred when it failed to provide him the rights advisory required by Minn. R.Crim. P. 27.04.[2] We address each issue in turn.
I.
We first consider Beaulieu’s argument that his probation revocation must be reversed because the district court violated a claimed constitutional right “to be advised” of the due process rights articulated in Morrissey, 408 U.S. at 488-89, 92 S.Ct. 2593. Because Beaulieu did not assert the alleged constitutional right in the district court, we must address the threshold issue of whether the common law forfeiture doctrine precludes the requested relief.[3]
“[A] constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.” United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted) (internal quotation marks omitted); see also State v. Williams, 794 N.W.2d 867, 874 (Minn. *279 2011) (explaining that “[w]e ordinarily do not consider issues raised for the first time on appeal, even when those issues are constitutional questions of criminal procedure or are challenges to the constitutionality of a statute”); State v. Goodloe, 718 N.W.2d 413, 422 n. 6 (Minn.2006) (explaining that the term “forfeiture” most accurately described the effect of failing to bring an alleged error to the attention of the district court). The forfeiture doctrine reflects the “need to encourage all trial participants to seek a fair and accurate trial the first time around.” United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); accord State v. Ramey, 721 N.W.2d 294, 299 (Minn.2006). Put differently, the forfeiture doctrine “encourages defendants to object while in the [district] court so that any errors can be corrected before their full impact is realized.” State v. Pearson, 775 N.W.2d 155, 161 (Minn.2009). But because “[a] rigid and undeviating judicial! ]” application of the forfeiture rule “would be out of harmony with ... the rules of fundamental justice,” state and federal rules of criminal procedure provide appellate courts “a limited power to correct errors that were forfeited because not timely raised in district court.” Olano, 507 U.S. at 731-32, 113 S.Ct. 1770 (citation omitted) (internal quotation marks omitted).
Minnesota Rule of Criminal Procedure 31.02 provides that a “[p]lain error affecting a substantial right can be considered by the court on motion for new trial, post-trial motion, or on appeal even if it was not brought to the trial court’s attention.” Rule 31.02 is based on Fed.R.Crim.P. 52(b), which reads: “A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.”[4] The limited power provided by the state and federal rules is known as the “plain-error doctrine.” Young, 470 U.S. at 15, 105 S.Ct. 1038; accord Ramey, 721 N.W.2d at 297-98.
The plain-error doctrine “tempers the blow of a rigid application of the contemporaneous-objection requirement” through a “careful balancing of [the] need to encourage all trial participants to seek a fair and accurate trial the first time around against [the] insistence that obvious injustices be promptly redressed.” Young, 470 U.S. at 15, 105 S.Ct. 1038 (citation omitted) (internal quotation marks omitted); accord Ramey, 721 N.W.2d at 299. As part of that careful balance, the plain-error doctrine requires a defendant to establish (1) an error, (2) that is plain, and (3) that affects the defendant’s substantial rights. State v. Griller, 583 N.W.2d 736, 740 (Minn.1998) (citing Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). If the defendant satisfies the first three prongs of the plain-error test, “we may correct the error only if it ‘seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.’ ” State v. Crowsbreast, 629 N.W.2d 433, 437 (Minn.2001) (quoting Johnson, 520 U.S. at 467, 117 S.Ct. 1544) (alteration in original); accord State v. Bahtuoh, 840 N.W.2d 804, 811 (Minn.2013).
To satisfy the first prong of the plain-error doctrine, Beaulieu must establish: (1) a probationer has a constitutional right “to be advised” of the due process rights articulated in Morrissey, and (2) the district court violated that right in his case. We begin by considering the issue of whether a probationer has a constitutional *280 right “to be advised” of the due process rights articulated in Morrissey.
Both the United States and Minnesota Constitutions afford criminal defendants due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. “The fundamental requirement of due process is the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ ” State v. Krause, 817 N.W.2d 136, 145 (Minn.2012) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Whether a defendant has been denied due process of law is a question of law that we review de novo. Rew v. Bergstrom, 845 N.W.2d 764, 785 (Minn.2014).
In Morrissey, the Supreme Court held that a parolee, faced with parole revocation and a loss of liberty, is entitled to procedural due process. 408 U.S. at 482, 92 S.Ct. 2593. The Court acknowledged that parole revocation is not part of a criminal prosecution and thus the “full panoply of rights due a defendant in such a proceeding does not apply.” Id. at 480, 92 S.Ct. 2593. Nevertheless, it concluded that in the context of a parole revocation, the minimum requirements of due process included:
(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a “neutral and detached” hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
Id. at 489, 92 S.Ct. 2593. The Court extended the Morrissey procedural due process rights to probation revocations in Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The Court reasoned that “[pjrobation revocation, like parole revocation ... result[s] in a loss of liberty.” Id. Therefore, a probationer “is entitled to a preliminary and a final revocation hearing, under the conditions specified in Momssey.” Id.
Pursuant to Momssey and Gag-non, a probationer is entitled to procedural due process prior to the revocation of probation. But there is nothing in Momssey or Gagnon to suggest that a probationer has a separate constitutional right to be advised of the due process rights articulated in Morrissey. Beaulieu contends that such a right can be found in United States v. Correa-Torres, 326 F.3d 18, 25 (1st Cir. 2003), and United States v. LeBlanc, 175 F.3d 511, 515 (7th Cir.1999). But the issue in Coma-Toms and LeBlanc was not whether a probationer had a separate due process right “to be advised” of the due process rights articulated in Momssey. Instead, the issue was whether a probationer’s waiver of the Momssey due process rights had to be knowing and voluntary. 326 F.3d at 25, 175 F.3d at 515.
We conclude that a probationer does not have a separate constitutional right “to be advised” that he or she has the procedural due process rights articulated in Moms-sey. Because Beaulieu has failed to establish a separate constitutional right “to be advised” of the due process rights articulated in Momssey, he has not satisfied the “error” requirement of the plain-error doctrine, and therefore the common law forfeiture doctrine precludes the requested relief — a reversal of his probation revocation.
*281 II.
Second, Beaulieu argues that his probation revocation must be reversed because the district court erred by failing to provide him with the rights advisory required by Minn. R.Crim. P. 27.04. Because defense counsel did not object to the court’s failure to comply with Rule 27.04, and the error falls within the category of an alleged trial error, we must determine whether the plain-error doctrine allows us to remedy this otherwise forfeited error. See State v. Kuhlmann, 806 N.W.2d 844, 852-58 (Minn.2011).
Rule 27.04 requires a district court to inform a probationer of his right to:
a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;
b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;
c. disclosure of all evidence used to support revocation and of official records relevant to revocation;
d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;
e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation;
f. appeal any decision to revoke probation.
Minn. R.Crim. P. 27.04, subd. 2(l)(c).
We have not previously applied the plain-error doctrine to a defendant’s claim that the court failed to provide him with the rights advisory required by Minn. R.Crim. P. 27.04. We have, however, recently applied the doctrine to a claim that the court failed to obtain the defendant’s personal waiver of his right to a jury trial, as required by Minn. R.Crim. P. 26.01, subd. 1(2). Kuhlmann, 806 N.W.2d at 852-53. In Kuhlmann, we explained that the alleged error should be reviewed for plain error because the “trial court’s failure to obtain a personal waiver in this case falls into the category of ‘trial errors’ occurring in the prosecution of the case, rather than a defect in the constitution of the trial mechanism.” Id. at 852. The district court’s failure to provide Beaulieu the Rule 27.04 rights advisory falls into the same category as the error in Kuhlmann. Put differently, it is the type of nonstructural error that the district court could have corrected had it been brought to the court’s attention, and therefore Beaulieu has forfeited appellate review of his Rule 27.04 claim unless he can satisfy the requirements of the plain-error doctrine.[5]
We conclude that Beaulieu has established the first two prongs of the plain- *282 error doctrine. The district court’s failure to provide Beaulieu with the rights advisory mandated by Minn. R.Crim. P. 27.04 was an error that was plain because it contravened an unambiguous rule of criminal procedure. Nevertheless, we conclude that Beaulieu has not met his heavy burden of showing the error affected his substantial rights. Beaulieu has not alleged, much less offered any evidence, that he lacked actual knowledge of the rights set forth in Rule 27.04, nor that he would have denied the - probation violations had the court read him the Rule 27.04 rights advisory.[6] Because Beaulieu has failed to meet his heavy burden of showing the error was prejudicial and affected the outcome of the proceedings, we conclude the district court’s plain error in failing to provide Beaulieu the rights advisory required by Minn. R.Crim. P. 27.04 did not affect his substantial rights.[7]
Affirmed.
Dissenting, LILLEHAUG, PAGE, and WRIGHT, JJ.

. Although Minn. R.Crim. P. 27.04 does not contain the phrase "admit/deny hearing/' the court of appeals used the phrase in State v. Narvaez to describe a hearing that occurs between a first-appearance hearing and a contested-revocation hearing. No. A13-0511, 2013 WL 6569943, at *1 (Minn.App. Dec. 16, 2013).

. In his brief, Beaulieu fails to acknowledge the distinction between the procedural requirements of Minn. R.Crim. P. 27.04 and the procedural due process requirements of the state and federal constitutions. Cf. State v. Everett, 472 N.W.2d 864, 867 n. 2 (Minn.1991) (noting the distinction between a violation of a court rule and a violation of the federal constitution). Because the distinction between a rule violation and a constitutional violation is important, we separately discuss the alleged violations.

. We have sometimes used the phrase "waived ... appellate review” when discussing a defendant’s failure tó object to an error in the district court. See, e.g., Montanaro v. State, 802 N.W.2d 726, 732 (Minn.2011). But the United States Supreme Court has drawn a distinction between forfeiture and waiver, explaining that "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted) (internal quotation marks omitted) (quoted in State v. Jeffries, 806 N.W.2d 56, 64 n. 4 (Minn.2011)). We therefore use the word "forfeiture” when describing a failure to make a timely assertion of a right.

. See Minn. R.Crim. P. 31 cmt.-1990 ("Rule 31.02 (Plain Error) comes from Fed. R.Crim.P. 52(b)”).

. We acknowledge that in State v. Osborne, we concluded the defendant had not forfeited appellate review of a claim that the district court failed to provide him with a Blakely trial, even though the defendant failed to raise the claim in the district court. 715 N.W.2d 436, 441-42 (Minn.2006). But Osborne is procedurally and factually distinguishable from Beaulieu's case. In Osborne, an intervening change in the law excused the defendant’s failure to assert what would have otherwise been a futile objection in the district court. Id. at 442 (explaining that at the time of the defendant’s sentencing, "our case law had consistently rejected any Blakely-type claim”). Put differently, the purpose underlying the general forfeiture rule — encouraging a defendant to object while in the district court so that any errors can be corrected before their full impact is realized — was not implicated in Osborne because asserting a futile Blakely objection would not have led to correction of the error.

. The record in this case is distinguishable from State v. Little, 851 N.W.2d 878 (Minn.2014), in three important respects. First, the record in Little contained a statement by defense counsel that indicated Little may not have had a full appreciation of what was happening in the days leading up to his trial because everything was moving at "laser light speed.” Id. at 885. Second, Little told the probation officer who conducted his presen-tence investigation that he did not know about the added charge until after he was found guilty. Id. Third, the rule at issue in Little not only required the court to advise Little of his right to a jury trial, it also required the defendant's jury trial waiver to be made "personally, either in writing or on the record.” Id. at 881.

. The dissent contends that Beaulieu’s brief raises an additional issue — whether Beaulieu waived his Moirissey rights. To support that contention, the dissent relies on the court of appeals’ opinion, the order granting review, the brief filed by Beaulieu in this court, and some of the questions asked during oral argument. With all due respect to the dissent, we conclude that the basis for Beaulieu’s waiver claim throughout these proceedings is that the district court failed to advise Beaulieu of his Monissey rights on the record. For example, Beaulieu’s brief describes the issue presented as whether “the district court violated [his] due process rights by failing to inform him of his Morrissey rights prior to accepting his admission to the alleged probation violation." He then argues that the district court erred by violating an alleged constitutional right “to be advised” of his Morrissey due process rights and by failing to comply with Minn. R.Crim. P. 27.04. Following these arguments, Beaulieu states, "The next question is whether despite this failure, was there a valid waiver of these rights." Beaulieu contends the answer to this question is "no” because "he was never advised of his rights on the record.” Yet that is the precise claim we reject above. Because Beaulieu’s waiver claim is not independent of his “notice” argument, we need not separately address it.