*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2029**

State of Minnesota,
Respondent,

vs.

Zacharie Allen Stankey,
Appellant.

**Filed June 22, 2015
Affirmed
Hooten, Judge**
Hon. Patrice K. Sutherland
Carver County District Court
File No. 10-CR-13-162

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Colin Haley, Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Minge,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant pleaded guilty to fourth-degree criminal sexual conduct and received a probationary sentence. A year later, at a first-appearance probation-revocation hearing, appellant, after admitting that he had violated conditions of his probation, asked the district court to revoke his probation and execute his sentence. On appeal from revocation of his probation and execution of his sentence, appellant argues that his procedural due process rights were violated at the first-appearance hearing when the district court failed to advise him of his revocation rights. He also argues that he did not validly waive those rights. We affirm.

## FACTS

In May 2013, appellant Zacharie Allen Stankey pleaded guilty to fourth-degree criminal sexual conduct and was convicted. He was sentenced in August 2013. The district court ordered a stay of execution and imposed numerous conditions of probation. Stankey subsequently signed a felony probation agreement, which listed all of the conditions of his probation. The agreement stated, "If at any time during your probationary period the [c]ourt finds you have failed to follow any one of the [conditions], it has the authority to revoke your probation and send you to jail or prison."

In February 2014, Stankey's probation officer filed a probation-violation report alleging that Stankey had committed the following violations: (1) moving without informing his probation officer of his new address and without updating his predatory offender registration; (2) failing to complete his chemical-dependency and mental-health

treatment; (3) failing to abstain from alcohol use; and (4) accessing prohibited pornographic websites. A warrant was issued for his arrest.

In August 2014, a first-appearance probation-revocation hearing was held on this case and Stankey's other case. At the beginning of the hearing, the following exchange took place:

> DEFENSE COUNSEL: Your Honor, Mr. Stankey is here by his own request to execute the sentence in the [fourth-degree criminal sexual conduct case]. It's a 36-month commit.
> . . . .
> DISTRICT COURT: Okay. So, Mr. Stankey, you're admitting you violated probation and you're asking that your sentence be executed?
> STANKEY: Thank you, Your Honor.
> DISTRICT COURT: Okay. So I'll commit you to the Commissioner of Corrections to serve 36 months.

This was the extent of the district court's inquiry into the alleged probation violations pertinent to this case. Later during the hearing, while discussing another case, the following exchange took place:

> DEFENSE COUNSEL: And I have gone over the fact that he has the right to have a hearing on [his alleged probation violation in the other case]. He is willing to waive that right [in] both this [case] and the [fourth-degree criminal sexual conduct case] and just have the sentence executed.
> DISTRICT COURT: And, Mr. Stankey, you're admitting you violated probation on [the other case]?
> STANKEY: Correct, Your Honor.
> DISTRICT COURT: All right. I'll accept that admission and execute a 90-day sentence.

The district court revoked Stankey's probation on the fourth-degree criminal sexual conduct case and executed his sentence. This direct appeal followed.

3

## D E C I S I O N

Stankey's arguments on appeal are limited to his assertions that (1) his procedural due process rights were violated at the revocation hearing and (2) he did not validly waive those rights. Shortly after Stankey filed his appellate brief, the Minnesota Supreme Court issued its decision in *State v. Beaulieu*, 859 N.W.2d 275 (Minn. 2015), which is controlling here. There is no meaningful difference between the relevant facts in *Beaulieu* and the relevant facts in this case. Moreover, because Stankey's arguments are identical to the unsuccessful arguments made by the appellant in *Beaulieu*, we conclude that Stankey is not entitled to withdrawal of his admission to probation violations and reversal of his executed sentence.

## I.

Stankey first argues that the district court violated his procedural due process rights by failing to advise him of his rights under *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972), prior to accepting his admission and revoking his probation. In *Beaulieu*, the Minnesota Supreme Court held that "a probationer does not have a separate constitutional right 'to be advised' that he or she has the procedural due process rights articulated in *Morrissey*." 859 N.W.2d at 280. Therefore, Stankey's federal constitutional argument must fail.

Stankey next argues that the district court violated his procedural due process rights by failing to give him the mandatory rights advisory contained in Minn. R. Crim. P. 27.04, subd. 2(1)(c). "The interpretation of the rules of criminal procedure is a question of law subject to de novo review." *Ford v. State*, 690 N.W.2d 706, 712 (Minn.

4

2005).  Rule 27.04 requires the district court, at a first-appearance probation-revocation hearing, to inform a probationer of his right to:

<blockquote>

a.   a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;

b.   a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;

c.   disclosure of all evidence used to support revocation and of official records relevant to revocation;

d.   present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;

e.   present mitigating evidence or other reasons why the violation, if proved, should not result in revocation; [and]

f.   appeal any decision to revoke probation.

</blockquote>

Minn. R. Crim. P. 27.04, subd. 2(1)(c).

Stankey's defense counsel failed to object at the hearing to the district court's failure to give Stankey the rule 27.04 rights advisory.  Therefore, Stankey's claim based on a violation of rule 27.04 is subject to plain-error review.  *Beaulieu*, 859 N.W.2d at 281.  The three-pronged test for plain error requires Stankey to show that: (1) the district court committed error; (2) the error committed was plain; and (3) the plain error affected his substantial rights.  *State v. Manley*, 664 N.W.2d 275, 283 (Minn. 2003).  Each prong of the test must be satisfied.  *Id.*  Even if plain error affecting substantial rights is shown, a reviewing court will correct the error "only if it seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."  *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted).

In *Beaulieu*, the district court failed to give Beaulieu the rule 27.04 rights advisory at his first-appearance probation-revocation hearing. 859 N.W.2d at 277. The supreme court concluded that "[t]he district court's failure to provide Beaulieu with the rights advisory mandated by Minn. R. Crim. P. 27.04 was an error that was plain because it contravened an unambiguous rule of criminal procedure." *Id.* at 282. But, the supreme court concluded that Beaulieu had not met his "heavy burden" of establishing that the plain error affected his substantial rights: "Beaulieu has not alleged, much less offered any evidence, that he lacked actual knowledge of the rights set forth in [r]ule 27.04, nor that he would have denied the probation violations had the court read him the [r]ule 27.04 rights advisory." *Id.*

Here, Stankey likewise has established the first two prongs of the plain-error test because the district court did not give him the rule 27.04 rights advisory. *See id.* But, as was the case in *Beaulieu*, by failing to satisfy his "heavy burden" of showing that the plain error affected his substantial rights, he has not established the third prong. *See id.* Based upon the record on review, Stankey "has not alleged, much less offered any evidence, that he lacked actual knowledge of the rights set forth in [r]ule 27.04." *Id.* There is no evidence indicating that he lacked such knowledge. In fact, the transcript from the first-appearance hearing suggests the opposite. While discussing Stankey's admission that he violated conditions of his probation in this case and another case, defense counsel strongly suggested that she had informed Stankey of these rights and that Stankey wanted to waive them: "And *I have gone over the fact that he has the right to have a hearing* on [his alleged probation violation in the other case]. *He is willing to*

6

*waive that right [in] both [cases]* and just have the sentence executed." (Emphasis added.) Moreover, Stankey has made no showing that "he would have denied the probation violations had the court read him the [r]ule 27.04 rights advisory." *Id.* In fact, the record shows that Stankey affirmatively requested that the district court execute his sentence, and he has made no showing that he did not understand his rights or that an advisory of his rights would have altered his request for the execution of his sentence. There is no evidence indicating that the district court's plain error was prejudicial or changed the outcome of the hearing in any way.[1]

## II.

Stankey also argues that, because he did not validly waive his procedural due process rights under *Morrissey* and under rule 27.04, his waiver was not knowing and intelligent.

Over a strong dissent, the majority in *Beaulieu* declined to separately address Beaulieu's waiver argument, concluding that his waiver argument was entirely dependent on his advisory, or notice, argument, which the majority rejected. *See id.* at 282 n.7 ("[W]e conclude that the basis for Beaulieu's waiver claim throughout these proceedings is that the district court failed to advise Beaulieu of his *Morrissey* rights on the record. . . . Because Beaulieu's waiver claim is not *independent* of his 'notice' argument, we need

---

[1] We note that, in general, this type of challenge is more properly brought via a petition for postconviction relief, rather than a direct appeal. In a postconviction proceeding before the district court, the defendant has the opportunity to allege that: (1) he lacked knowledge of his revocation rights; and (2) had he been informed of his rights, he would have asked for an evidentiary hearing. *See generally* Minn. Stat. §§ 590.01–.04 (2014). Here, in this direct appeal from the revocation of Stankey's probation and execution of his sentence, there is no district court record for our review supporting such assertions.

not separately address it."). Because Stankey's arguments, as well as the relevant facts underlying his claim, are materially identical to Beaulieu's, we reject Stankey's waiver argument.

Based upon this record and the identical arguments that were made by the appellant in *Beaulieu* and rejected by the Minnesota Supreme Court, we conclude that Stankey is not entitled to a reversal of the revocation of his probation.

**Affirmed.**