*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0355**

In the Matter of the Welfare of:
S.L.S., Child

**Filed November 7, 2016
Affirmed in part, reversed in part, and remanded
Ross, Judge**

Hennepin County District Court
File No. 27-JV-14-7651

Lee M. Orwig, Hallberg Criminal Defense, Bloomington, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, John, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Juvenile S.L.S. pleaded guilty to third-degree criminal sexual conduct for sexually molesting an 11-year-old girl, and the parties agreed that the district court would stay his adjudication if he succeeded in sex-offender treatment. After S.L.S. failed the outpatient

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

treatment program, the district court adjudicated him delinquent and ordered him to participate in long-term residential treatment. S.L.S. appeals, challenging the validity of his plea, the adjudication and disposition, the district court's denial of his motion to withdraw his plea, and the efficacy of his counsel. Because S.L.S.'s plea was knowing and intelligent, and because the district court did not abuse its discretion by adjudicating him delinquent or denying his plea-withdrawal motion, we affirm in part. But the parties both agree, accurately, that the district court did not make the necessary findings supporting its disposition. We therefore reverse in part and remand. We decline to address S.L.S.'s claim of ineffective assistance of counsel.

## FACTS

Juvenile S.L.S. pleaded guilty to third-degree criminal sexual conduct after an 11-year-old girl he babysat reported that he had digitally penetrated her vagina in October 2014. S.L.S.'s guilty plea followed an agreement in which S.L.S. would plead guilty to one count of third-degree criminal sexual conduct and under which, "if [S.L.S.] is successful at treatment . . . through the County Home School, [then] he will receive a stay of adjudication." S.L.S.'s attorney questioned S.L.S. on the record and informed him of the trial rights he would waive by pleading guilty. S.L.S. indicated that he understood his rights, had enough time to talk about the matter with his attorney, and wanted to admit to the offense. He admitted that while he was babysitting the victim, he placed her on his lap against her will, stuck his hand down her pants, engaged in skin-to-skin contact, and digitally penetrated her. But no one discussed with him the possible dispositions or consequences on the record, and the record contains no written waiver of his trial rights.

2

The district court entered an order continuing disposition that, among other things, indicated that S.L.S. had made a knowing, intelligent, and voluntary waiver of his trial rights. The district court imposed conditions including that "[S.L.S.] shall fully participate in and successfully complete the County Home School Adolescent and Family Sexual Health Services (AFSHS) *out*patient program." (Emphasis added.)

S.L.S. failed in treatment, and his therapist and probation officer reported this to the district court. According to the therapist, S.L.S. fell behind in assignments, did not fully participate in sessions, refused to take responsibility for his offense, saw himself as the victim, questioned whether he harmed the actual victim, and attempted to engender pity. He also disclosed other victims. His therapist opined that S.L.S. advanced only when he was pressured to do so. The clinical team decided to terminate S.L.S. from the outpatient program. The probation officer recommended his placement in the long-term residential treatment program.

The district court conducted a hearing after which it adjudicated S.L.S. delinquent. At the hearing, S.L.S.'s attorney asked for a stay of adjudication. The district court asked whether S.L.S. had anything to say, to which S.L.S.'s attorney responded, "I have spoken for him." The district court placed S.L.S. on supervised probation until February 2018 and conditioned it on his fully participating in the AFSHS long-term residential treatment program. The district court's findings expressly incorporated the county's "report dated 2/2/2016" and made additional findings "including why public safety and the best interests of the child are served by this disposition order, and how this placement meets the needs of the child." The court found that prior programming, treatment, and consequences had

failed to render S.L.S. law-abiding, that S.L.S.'s behavior put him and others at risk, that if S.L.S.'s treatment needs continued to go unmet S.L.S. and others risked being harmed, and that those needs could not be met without residential care.

S.L.S. appeals.

## D E C I S I O N

S.L.S. raises numerous issues on appeal. First, he challenges that his plea was not knowing and intelligent because he was not informed of dispositional consequences and possibilities. Second, he argues that the district court violated the plea agreement by adjudicating him delinquent rather than continuing or staying adjudication. Third, he challenges the district court's denial of his motion to withdraw his plea. Fourth, he contends that the district court's order imposing out-of-home placement was not supported by sufficient findings. And fifth, he claims he received ineffective assistance of counsel.

## I

S.L.S. argues that the district court should not have accepted his guilty plea and should have allowed him to withdraw it. We ordinarily review a district court's denial of a motion to withdraw a plea for an abuse of discretion, *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989), but S.L.S. did not file a motion to withdraw his plea with the district court until after he filed his notice of appeal. This court generally will not decide issues that were not first raised before the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But an offender may challenge the validity of a guilty plea for the first time on appeal if the record provides a sufficient basis for meaningful review. *See State v. Anyanwu*, 681 N.W.2d 411, 413 n.1 (Minn. App. 2004). The supreme court has also said defendants are

4

"free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate" to establish a valid plea. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). The record gives us a sufficient basis for review, so we address S.L.S.'s challenge.

S.L.S. argues that the district court should have allowed him to withdraw his guilty plea because his plea was invalid. A juvenile may withdraw his guilty plea at any time if he shows "that withdrawal is necessary to correct a manifest injustice." Minn. R. Juv. Delinq. P. 8.04, subd. 2(B). A manifest injustice exists if a guilty plea is invalid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). To be valid a plea must be entered into intelligently, voluntarily, and accurately. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). Whether a guilty plea was valid is a question of law we review de novo. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). The defendant bears the burden to establish the invalidity of his plea. *Id.*

S.L.S. argues that his guilty plea was invalid because he was unaware and was not advised of the dispositional implications and consequences of his plea. Before the district court accepts a juvenile's plea, it must determine that the juvenile understands the charges against him and the factual basis, his trial rights, the court's dispositional powers and future consequences of disposition, his right to counsel, and that the juvenile freely chooses to plead guilty and harbors no claim of innocence. Minn. R. Juv. Delinq. P. 8.04, subd. 1(A)–(F). The requirement that the district court must establish the juvenile's understanding of dispositional possibilities and consequences includes the child's understanding of the court's power to place him in an institution, impose a disposition lasting until the child is

5

19, or modify a disposition. Minn. R. Juv. Delinq. P. 8.04, subd. 1(C). The child must also understand any potential future consequences of the disposition. *Id.* The district court must make this determination "under the totality of the circumstances, and based on the child's statements, whether on the record or contained in a written document signed by the child and the child's counsel[.]" *Id.*, subd. 1. The parties apparently agree that the district court did not hear any on-the-record inquiry or receive any written waiver addressing dispositional consequences and possibilities, and the record supports their agreement.

The state urges us to overlook the district court's failure to satisfy the pre-plea requirements of rule 8.04. It asks us to recognize that failing to strictly comply with the plea-colloquy requirements of Minnesota Rule of Criminal Procedure 15.01 does not invalidate an adult's guilty plea and that, by analogy, we should apply the juvenile delinquency rule with similar liberality. It identifies two supporting cases. In *Doughman v. State*, we reasoned that the fact that Doughman "discussed the case, the plea bargain, and other options with his attorney before entering his guilty plea raises the presumption he was informed of his rights." 351 N.W.2d 671, 674 (Minn. App. 1984), *review denied* (Minn. Oct. 16, 1984). In *State ex rel. Drysdale v. Tahash*, the Minnesota Supreme Court held, "In the absence of any affirmative showing to the contrary, there is a controlling presumption that court-appointed counsel in a criminal case not only has consulted with his client, the accused, but also has advised him in good faith of his rights in entering a plea of guilty or not guilty." 278 Minn. 361, 367, 154 N.W.2d 691, 695 (1967) (quoting *State ex rel. Moriarty v. Tahash*, 261 Minn. 426, 429, 112 N.W.2d 816, 819 (1962) (quotation marks omitted)).

Caselaw informs us that the supreme court and this court have regularly presumed that an adult defendant's attorney has adequately apprised him so as to establish his understanding of charges, rights, and consequences. *See, e.g.*, *State v. Stellmach*, 307 Minn. 359, 360, 240 N.W.2d 820, 821 (1976) (a court may presume that counsel informed a defendant of the consequences of pleading where he had full opportunity to discuss case with counsel before entering the plea); *Swanson v. State*, 284 Minn. 66, 71–72, 169 N.W.2d 32, 36 (1969) ("When a court-appointed counsel represents a defendant, it is presumed that his counsel will advise him of his rights and the consequences that will follow a plea of guilty or not guilty."); *State v. Propotnik*, 299 Minn. 56, 58, 216 N.W.2d 637, 638 (1974) ("[S]ince the record shows that defendant had full opportunity to consult with his counsel before entering his plea, we may safely presume that counsel informed him adequately concerning [his right to confront his accusers at trial.]"); *Hernandez v. State*, 408 N.W.2d 623, 626 (Minn. App. 1987) (where a trial court examines a defendant who had full opportunity to consult with counsel, the court may safely presume the defendant was adequately informed of his rights). The question here turns to whether this same presumption is available in juvenile proceedings.

Our unpublished juvenile decisions give conflicting answers. In *In re Welfare of P.T.C.*, for example, a panel of this court reversed an adjudication, refusing to apply the presumption because "[i]t is not apparent that this adult princip[le] applies or should apply to a juvenile." No. A13-0543, 2013 WL 6569953, at *2–3 (Minn. App. Dec. 16, 2013). In *In re Welfare of M.T.L.*, another panel observed that the juvenile had sufficient time to speak with his attorney before pleading guilty and relied on the notion that defendants who

7

consult with counsel are presumed to be aware of their rights, charges, and alternatives. No. A06-650, 2007 WL 1191579, at *3 (Minn. App. Apr. 24, 2007) (citing *Berkow v. State*, 573 N.W.2d 91, 95 (Minn. App. 1997), *aff'd*, 583 N.W.2d 562 (Minn. 1998)); *see also State v. Lyle*, 409 N.W.2d 549, 552 (Minn. App. 1987). In *In re Welfare of N.D.J.*, we applied the presumption that counsel has "advised [his juvenile client] in good faith of his rights in entering a plea of guilty or not guilty." No. A05-2200, 2007 WL 656403, at *5 (Minn. App. Mar. 6, 2007) (quoting *Drysdale*, 278 Minn. at 367, 154 N.W.2d at 695).

The mandatory language of the adult rule and juvenile rule so resemble each other as to make them operatively indistinguishable. Both the original and amended language of the adult rule include mandatory language. In its original text, the Minnesota Rules of Criminal Procedure in 1975 directed the district court, "Before the court accepts a plea of guilty, the defendant *shall* be sworn and questioned by the court with the assistance of counsel as to the following: . . . ." Minn. R. Crim. P. 15.01 (1975) (emphasis added). And the modern rule includes a similarly mandatory directive, "Before the judge accepts a guilty plea, the defendant *must* be sworn and questioned by the judge with the assistance of counsel as to the following: . . . . " Minn. R. Crim. P. 15.01, subd. 1 (2014) (emphasis added). The juvenile rule parallels this language by putting the same directive in negative form: "The court *shall not* accept a child's plea of guilty *until first* determining . . . ." Minn. R. Juv. Delinq. P. 8.04, subd. 1 (emphasis added).

Given the regular application of the presumption to the adult rule and the substantive similarity between the adult rule and the juvenile rule, consistency suggests that we ought to apply the presumption the same in both settings. Despite the discussion in *Welfare of*

*P.T.C.* suggesting that we might treat the parallel rules differently because one appears in the adult-offender setting and the other in the juvenile-offender setting, we do not think this distinction does much to help answer the issue. This is because the difference arguably both supports and opposes applying the presumption in juvenile cases. That is, on one hand, applying the on-the-record-notice rule most strictly in the juvenile setting does seem to further the policy of providing greatest protection to juvenile offenders; but on the other hand, applying the advised-by-counsel presumption in the juvenile setting could be justified particularly because lawyers are more likely to be more careful when they advise juveniles than when they advise adults. In any event, we believe that the presumption is available in the juvenile setting for the sake of consistency in the law.

S.L.S. claims that he was not made aware of the fact that his plea might result in his being removed from his parents' home. But he had the benefit of legal counsel for nearly two months before he decided to admit his offense, and his admission was part of a thorough, negotiated plea agreement. S.L.S. was questioned on the record extensively about his waiver of trial rights and the factual basis for his plea. He indicated he had enough time to speak with his attorney, and, under the circumstances, we presume that his discussions with his attorney included what could happen to him if he entered the plea agreement and pleaded guilty. On the record before us, we hold that S.L.S.'s plea was knowing and intelligent.[1]

---

[1] We note that S.L.S.'s motion to withdraw his plea also challenged the accuracy of his plea. He submitted that motion to the district court after he filed his notice of appeal, and the district court did not address it. We decline, without prejudice, to reach that issue.

Although the parties did not frame their arguments based on the supreme court's recent plain-error reasoning in *State v. Beaulieu*, 859 N.W.2d 275 (Minn. 2015), we observe that so framing the appeal here would not change the result. The *Beaulieu* court considered the appeal of a defendant whose admission to a probation violation the district court accepted without first reading the advisory of trial rights required by rule 27.04 of the Minnesota Rules of Criminal Procedure. 859 N.W.2d at 281. The court treated the district court's unobjected-to failure to comply with the rule as a trial error subject to plain-error appellate review. *Id.* It concluded that the district court had erred plainly by failing to read the required advisory, but it found no prejudice and affirmed the probation revocation because Beaulieu had "not alleged, much less offered any evidence, that he lacked actual knowledge of the rights set forth in Rule 27.04, nor that he would have denied the probation violations had the court read him the Rule 27.04 rights advisory." *Id.* at 282. In so failing to present evidence establishing that the outcome would have been different had he been properly advised, Beaulieu "failed to meet his heavy burden of showing the error was prejudicial." *Id.* Similarly S.L.S. has failed to identify any evidence to establish that, but for the failure to properly advise him of the possible out-of-home disposition, he would not have admitted his offense and pleaded guilty. So whether we presume that his attorney did properly advise him, or we instead rely on the possibility that he did not, S.L.S. has not shown any manifest injustice in the district court's refusal to allow him to withdraw his guilty plea.

10

## II

S.L.S. argues that the district court abused its discretion by prematurely adjudicating him delinquent and, in doing so, failing to follow the plea agreement. He concedes that the plea agreement was conditioned on whether he succeeded in treatment at AFSHS, but in essence he argues that the agreement was not restricted to successful *outpatient* treatment; therefore adjudication should have been continued to allow residential treatment even after he was discharged from outpatient treatment.

We are not convinced by S.L.S.'s contention that the district court abused its discretion by adjudicating him delinquent rather than imposing a stay of adjudication. A district court has broad discretion to order dispositions authorized by statute. *In re Welfare of J.R.Z.*, 648 N.W.2d 241, 244–45 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). A district court may, but is not required to, continue a case without adjudicating the juvenile delinquent. *See* Minn. R. Juv. Delinq. P. 15.05, subd. 4(A); Minn. Stat. § 260B.198, subd. 7(a) (2014). "Most importantly, imposing an adjudication within the limits prescribed by the legislature is not an abuse of discretion." *J.R.Z.*, 648 N.W.2d at 245 (quotation omitted). S.L.S. was discharged from the outpatient program reportedly for his significant failure to participate meaningfully. This is enough, under the plea agreement and the law, to support the district court's exercise of discretion to adjudicate him delinquent.

S.L.S. does not persuade us otherwise by suggesting that this result violates the plea agreement. Whether a plea agreement was violated depends on its language, which informs us what the parties reasonably understood to be its terms. *State v. Brown*, 606 N.W.2d 670,

11

674 (Minn. 2000). Questions of interpretation and enforcement of plea agreements are issues of law that we review de novo. *Id.* The agreement here provided, "[I]f [S.L.S.] is successful at treatment at the [AFSHS] Program through the County Home School, . . . he will receive a stay of adjudication." We are satisfied from our de novo interpretation that S.L.S.'s failures in outpatient treatment cannot support any entitlement to a stay of adjudication. S.L.S. cannot reasonably claim that the plea agreement entitled him to inpatient placement *and* that his plea was not knowing and intelligent because he was unaware of inpatient treatment as a consequence. And the district court's order expressly instructed S.L.S. to "fully participate in and successfully complete [the] *outpatient* program." (Emphasis added.) We know that S.L.S.'s trial counsel reviewed this order, evidenced by his prompt filing of a motion to correct the order (because it adjudicated S.L.S. delinquent on two counts of criminal sexual conduct rather than the agreed-upon single count). The motion did not request that the "outpatient" requirement be removed.

Our careful review of the record informs us that the district court did not violate the plea agreement by adjudicating S.L.S. delinquent. Nor did the district court abuse its discretion by choosing to adjudicate S.L.S. delinquent rather than to impose a stay of adjudication or continue the disposition until some later date or event.

### III

S.L.S. contends that the district court erred by denying his motion to withdraw his plea without a hearing. The district court denied S.L.S.'s motion to withdraw his plea because S.L.S. had already appealed to this court. A juvenile may appeal an adverse final order and those non-final orders identified by rule. *See* Minn. R. Juv. Delinq. P. 21.03,

12

subd. 1(A)–(B). The district court's order denying S.L.S's motion for plea withdrawal is not one of the appealable orders under rule 21.03.

In some circumstances, we have discretion to consider an appeal from an order that is not explicitly appealable under rule 21.03. *Id.*, subd. 1. This is not one of those circumstances. We *may* allow an appeal from an otherwise nonappealable order if, among other things, the appellant has met the formalities of Minnesota Rule of Civil Appellate Procedure 105. Minn. R. Crim. P. 28.02, subd. 3. Rule 105.01 requires serving and filing a petition, along with other fee and filing duties. The contents of the petition itself are also subject to formal and substantive requirements. *See* Minn. R. Civ. App. P. 105.02. S.L.S. has met none of the discretionary-review formalities. He attempted to embed a "petition" for discretionary review in his brief in this appeal, and he followed none of the required procedures. We do not consider the question further.

## IV

The parties agree that the district court's findings were insufficient to support its disposition of out-of-home placement for inpatient treatment. Our review of the record informs us that the parties' agreement on this point is well founded.

The district court adjudicated S.L.S. delinquent and ordered him to complete an inpatient treatment program with other conditions. District courts are generally afforded broad discretion to determine the appropriate juvenile-delinquency disposition, and we will affirm a disposition if it is not arbitrary. *In re Welfare of N.T.K.*, 619 N.W.2d 209, 211 (Minn. App. 2000). The juvenile delinquency rules require that a dispositional order "shall" contain written findings of fact to support the disposition. Minn. R. Juv. Delinq. P. 15.05,

13

subd. 2(A). When a district court orders out-of-home placement, the disposition must be supported by findings that address five subjects: (1) why the disposition serves public safety; (2) why the disposition serves the child's best interests; (3) what alternative dispositions were proposed to the court and why such recommendations were not ordered; (4) why the child's present custody is unacceptable; and (5) how the correctional placement meets the child's needs. *In re Welfare of D.T.P.*, 685 N.W.2d 709, 712–13 (Minn. App. 2004); *see also* Minn. R. Juv. Delinq. P. 15.05, subd. 2 (providing requirements and considerations for dispositional orders). In its findings, the district court indicated that it "reviewed and accepted the report dated 2/2/2016 from the county . . . and incorporates the content of the report." The findings, including the incorporated report, fail to satisfy the express requirements of the rule.

S.L.S. urges us to reverse the disposition and order that the adjudication be stayed. The state recommends that the matter be remanded to the district court for complete findings. The state offers the better solution.

We have emphasized that written findings are "essential to meaningful appellate review" and are "required to show that the district court considered vital standards and to enable the parties to understand the court's decision." *N.T.K.*, 619 N.W.2d at 211. Deficient findings constitute reversible error. *See, e.g.*, *In re Welfare of R.V.*, 702 N.W.2d 294, 308 (Minn. App. 2005) ("Although the evidence may support the disposition ultimately, the findings lack the completeness required to guarantee that the district court considered the relevant factors."); *In re Welfare of J.A.J.*, 545 N.W.2d 412, 415 (Minn. App. 1996) (holding that a bare statement that the child's best interests required the disposition was

14

insufficient). The state might be correct that the record could ultimately support the out-of-home placement, but we will not look independently at the issue without sufficient findings. As was the situation in *Welfare of R.V.*, regardless of whether the evidence might ultimately support the disposition, adequate factual findings are necessary to support the disposition. The district court erred by ordering out-of-home placement without detailing its supportive findings, and we therefore reverse and remand for additional findings based on the record available to the district court.

## V

S.L.S. argues that his counsel failed to provide effective assistance because he failed to inform him of all the direct consequences of the plea agreement, inform him that he would have to register as a predatory offender, adequately ensure that the terms of the plea agreement were followed or move to withdraw his plea prior to disposition, and call him to speak at sentencing. But where the record does not provide a meaningful basis for review, we may decline to reach the merits of the issue. *See, e.g.*, *State v. Christian*, 657 N.W.2d 186, 194 (Minn. 2003); *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000); *see also Roby v. State*, 531 N.W.2d 482, 484 n.1 (Minn. 1995) (explaining that direct appeal from a judgment of conviction is not the most appropriate way to raise an ineffective-assistance-of-counsel claim because the appellate court consequently lacks the facts of why counsel did or did not do certain things). We would be required to speculate as to the reasons underlying trial counsel's decisions here. We decline to do so. We therefore, presumably without prejudice, will not reach the merits of this issue.

**Affirmed in part, reversed in part, and remanded.**