STATE EX REL. JAMES NORGAARD v. RALPH TAHASH.

110 N. W. (2d) 867.

September 15, 1961—No. 38,327.

*Walter F. Mondale,* Attorney General, *Henry H. Feikema,* Special Assistant Attorney General, and *John M. Smith,* County Attorney, for appellant.

*Joseph Robbie,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by the acting warden of the State Prison from orders discharging petitioner from imprisonment. A writ of habeas corpus was issued by the Washington County District Court upon a petition alleging that petitioner was deprived of his right to due process of law as provided by Minn. Const. art. 1, § 7, and U. S. Const. Amend. XIV, when his plea of guilty was allowed to stand in the trial court although he made statements in court that he had no knowledge of the alleged crime.

In the proceedings leading to petitioner's commitment, an information was duly filed with the District Court of Steele County on April 22, 1958, charging the petitioner with the crime of assault in the second degree. It was filed by virtue of an order of the district court in response to the petitioner's written application that he be permitted to plead guilty to the crime of assault in the second degree.

On April 22, 1958, petitioner appeared in the district court and was duly arraigned on the crime charged in the information. He was represented by an attorney who was appointed by the court to represent him. The information was read to petitioner and a copy of the same supplied to him, whereupon in response to the court's request for his plea, he entered a plea of guilty. The county attorney then described to the district court the events and circumstances which formed the basis of the information pertaining to the alleged assault in the early hours of April 5, 1958, on a 17-year-old girl. After entering the plea, petitioner was sworn and, in response to questions by the court as to the time the offense occurred, the petitioner replied, "I don't know for sure." He said that he went to bed about 2:30 or 3 o'clock that night but that he had no recollection of anything that happened after he went to bed. When asked if the statements made by the county attorney in connection with the offense were true, petitioner replied, "I guess they are. I can't remember them." He further stated he had been told what happened by others.

His attorney stated to the court that he had spoken with the petitioner with reference to his recollection of events on the evening involved and that he had advised him that it was his right to plead not

guilty and that the state had the burden of proving him guilty of this crime beyond a reasonable doubt. His attorney further stated, "He still felt that he preferred to plead guilty of this charge."

The court then stayed further proceedings and ordered the matter referred to the state probation agent for a presentence investigation and a report to the court. The petitioner was remanded to the custody of the sheriff.

About 5 weeks later petitioner again appeared in court with his attorney, and he testified, in reply to an examination by the court, that he had had considerable time to consider the matter since his first appearance in court but still could not remember any events that occurred on the night of the alleged assault. He then stated that the last thing he could remember on that particular night was when he went to bed and the next thing he remembered was when a policeman and another woke him up.

Following is an extract of the proceedings:

"Q You entered a plea of guilty to the charge of assault with intent to commit a felony. Do you realize—I understand you discussed it with your attorney—

"A Yes, I have.

"Q That phase of the matter, and also that you have the right if you desire to withdraw your plea of guilty. Have you discussed that with your attorney?

"A Yes, I have.

"Q In that connection do you have any desire to change your plea?

"A No. Everything seems to indicate it wouldn't do me no good to change it so I might as well leave it the way it is.

\* \* \* \* \*

"Q Would you step over here, please? You are satisfied, I take it, from the answers to the questions that your plea of guilty should stand?

"A Yes, I am."

The court then adjudged petitioner guilty of the crime of assault in the second degree and imposed sentence in the following language:

"THE COURT: Upon your plea of guilty, it is the judgment of this Court you are guilty of the offense charged in the information, that of assault in the second degree. It is now the sentence of this Court that you be committed to and confined in the State Prison at Stillwater, Minnesota for an indefinite period of time and until duly discharged as provided by law, not, however, exceeding a period of five years."

More than 2 years after his commitment to the State Prison, the petitioner filed his petition in the Washington County District Court for a writ of habeas corpus on the general claim that he was committed to the State Prison and detained therein by virtue of an invalid judgment of conviction. Thereafter on September 27, 1960, a writ of habeas corpus was issued.

After a hearing on the writ the district court made two orders, finding, among other things, that notwithstanding his plea of guilty at all times petitioner had persistently denied having any knowledge of the events connected with the commission of the offense with which he was charged. It further found that the District Court of Steele County should not have accepted a plea of guilty when the statements of petitioner were so inconsistent with his plea and that in the interest of justice it should have entered a plea of not guilty for the petitioner. The Washington County District Court declared the judgment of the Steele County District Court null and void and ordered that the petitioner be discharged from imprisonment. Appeal was taken from these orders.

The only issue appears to be whether the Steele County District Court should have refused to accept petitioner's plea of guilty in view of his statements to the court that he had no recollection of what took place on the night in question.

The petitioner relies on State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723. We do not regard that case as controlling here. In that case Dehning was arrested in Arizona prior to August 24, 1955, on a charge of willfully, unlawfully, wrongfully, and feloniously deserting and failing to support his wife while she was pregnant, with intent to wholly abandon her. He waived extradition and was

returned to Marshall, Minnesota, where he was placed in jail. On September 14, 1955, he appeared before the district court on an application to plead guilty. At that time, according to his uncontradicted testimony, he was brought into the courtroom and the county attorney introduced him to an attorney and stated that said attorney was to represent him. His attorney talked with him for about 10 minutes and advised him to plead guilty. This was, according to Dehning's uncontradicted testimony, the first and only time he had an opportunity to consult with an attorney in regard to his case. Apparently in compliance with the attorney's advice, he entered a plea of guilty to the charge. In any event, the only inquiry made by the court of Dehning before sentencing with respect to elements of the crime with which he was charged was as follows (251 Minn. 121, 86 N. W. [2d] 725):

"Q. And when you left Thurley on February 26th of this year, while she was pregnant, you intended to abandon her?

"A. I don't know, Your Honor, whether I intended to abandon her or not. We had been in a big argument, been arguing for a week. When I left that morning I was going to Minneapolis to see if I could raise some money to keep the business going. It was a slack season and there just wasn't anything doing; and when I left she said that if I left and went to Minneapolis that day, I didn't have to come back. The more I thought about it the madder I got. I got drunk and kept going."

Following that discussion, Dehning was immediately sentenced to be imprisoned in the State Prison where he was still confined at the time of his appeal to this court.

It was our opinion that *after* Dehning pleaded guilty and *before* he was sentenced, when he answered, "I don't know, Your Honor, whether I intended to abandon her or not," he indicated that he did not know, or at least was in doubt, as to whether he was guilty of an intent to abandon his pregnant wife. We held that his plea of guilty, qualified as it was, should not have been accepted. It was our opinion that before sentence was imposed Dehning's attorney, in view of his client's inconsistent statements, should have intervened and asked the court for additional time for a consultation with his client in order to

try to ascertain whether his conduct justified a plea of guilty and also to fully inform him of his legal rights. When the attorney failed to do that, we determined, the court on its own initiative should have instructed Dehning's attorney to have another consultation with his client and to inform him that, because of the doubt he expressed as to his intent, he could change his plea and have a jury trial if he so desired. We determined that the representation given the accused under the record in that case was so inadequate as to constitute a deprival of due process and render the court without jurisdiction to proceed with the arraignment.

In the instant case the record clearly establishes that no such condition existed. Here we have a situation where the alleged crime of assault occurred April 5, 1958. The information was filed on April 22, 1958, petitioner having made a written application, filed April 21, that he be permitted to plead guilty to the crime. He appeared in district court on April 22 and was duly arraigned; he was represented by court-appointed counsel and entered a plea of guilty. He had been advised that he had the right to plead not guilty and that the state had the burden of proving him guilty beyond a reasonable doubt. The court did not sentence him immediately but stayed further proceedings and referred the matter for a presentence investigation. Some 5 weeks later he again appeared before the court with his attorney. He was informed that he could change his plea of guilty but he did not choose to do so. He was then sentenced and thereafter committed to the State Prison where he remained for over 2 years before he filed a petition for a writ of habeas corpus.

A careful examination of the record satisfies us that under the facts and circumstances here the trial court did not err in accepting petitioner's plea of guilty. It seems clear from the record that the petitioner was adequately represented in court by his attorney. According to the affidavit of the attorney, petitioner was repeatedly advised as to his rights; he was told that he was entitled to a trial by a jury of 12 people, that any verdict finding him guilty would have to be the unanimous agreement of the 12 jurors, and that he was presumed to be innocent until proven guilty beyond a reasonable doubt. It also appears from the affidavit that in response to petitioner's statement that he had no rec-

ollection of the events which resulted in his arrest and thus no defense, his attorney advised him that he did not need a defense as an absolute prerequisite to a trial by jury and that he could insist upon the state proving its charge beyond a reasonable doubt even though he offered no evidence whatsoever contesting the charge. It also appears that his attorney explained to the petitioner what the penalty would be for the crime for which he was charged; that his attorney was prepared to represent him fully; and that if he wished to plead not guilty the attorney would conduct the trial of his case. It further appears that after being so advised the petitioner told his attorney that he accepted the evidence that had been obtained against him and he wished to plead guilty.

The affidavit goes on to state that his attorney informed the petitioner of the possible consequences of this plea of guilty; namely, that after sentence had been imposed he might or might not be placed on probation and further that he could not rely on getting probation or any other leniency from the court and that it would be entirely possible that he could be sent to prison and confined there for the maximum term; also that the attorney at no time encouraged the petitioner to plead guilty or recommended the same to him but on the contrary strongly emphasized petitioner's constitutional rights and his own willingness to represent petitioner in the trial of his case.

Petitioner's attorney further stated in his affidavit that subsequent to petitioner's arraignment he again consulted with petitioner on two separate occasions in the Steele County jail and each time encountered the same attitude on the part of the petitioner; that at all times he emphatically refused to entertain any idea of pleading not guilty and discouraged his attorney from any efforts in that direction and positively refused to enter a plea of not guilty.

The affidavit also stated that prior to his appearance in court with the petitioner on May 29, 1958, the date of sentence, the attorney again consulted with the petitioner and advised him that he could still and should, in view of his lack of memory, withdraw his plea of guilty and obtain a jury trial by entering a plea of not guilty, but that petitioner refused to authorize his attorney to withdraw the plea.

Approximately 13 months later, June 20, 1959, according to the

affidavit of the attorney, he first received a letter from the petitioner expressing regret that he had pleaded guilty. He later received additional letters from the petitioner but at no time did he try to blame his attorney for his plea but instead accused others of influencing him to plead guilty.

Minn. Const. art. 1, § 6, provides that in all criminal prosecutions the accused shall have the right of assistance of counsel in his defense. Section 7 of the same article provides that no person shall be held to answer for a criminal offense without due process of law. The right to assistance of counsel carries with it the requirement that consultation with counsel be sufficiently adequate to at least inform the accused of his legal rights. Where the plea of the accused and his subsequent inconsistent statements before sentence indicate that the consultation between the accused and his attorney was inadequate, further opportunity should be given for consultation before sentence is imposed. State ex rel. Dehning v. Rigg, *supra.*

The purpose of the right to counsel is to protect the accused from a conviction resulting from his own ignorance of his legal and constitutional rights. State ex rel. Schwanke v. Utecht, 233 Minn. 434, 47 N. W. (2d) 99.

We cannot say under the record here that the representation given the petitioner by his attorney was inadequate so as to constitute a deprival of due process and render the court without jurisdiction.

While we fully recognize the importance of protecting the constitutional rights of all persons accused of a crime, it is our opinion under the circumstances here that with the many weeks which elapsed between the first arraignment, when petitioner entered a plea of guilty, and the time that he was sentenced; with the repeated advice by the attorney and the Steele County district judge as to his rights; with the comparatively long time that the petitioner had to consider and change his plea before sentencing, the trial court did not err in finally accepting the plea and passing sentence.

If we were to say under the record here that reversible error was committed, we would be ruling in effect that no matter how obvious the crime or how anxious the accused might be to plead guilty, if he said he did not recall what happened, the court should not under

any conditions accept such a plea. We are not prepared to go that far with a record such as we have before us. Rather it seems possible to us that the petitioner's persistent desire to plead guilty, after repeated advice by his attorney and the court as to his constitutional rights, may have been based on some expectation on his part that even though he plead not guilty and was tried before a jury he would still be convicted.

Petition dismissed and orders reversed.

OTIS, JUSTICE (concurring).

In my opinion this decision turns on the fact that petitioner's own observations and investigation persuaded him he was guilty of the offense charged. He testified that when he regained his memory he discovered he was "pretty much cut up," presumably as a result of the victim's breaking a bottle over his head, and that he found his house torn up following the event. Defendant's amnesia does not preclude his having entertained a criminal intent at the time the offense was committed. It merely prevents his recalling such intent. Except in a capital offense, under the circumstances stated, a defendant should not be required to go to trial if he is mentally competent and has satisfied himself after careful inquiry that he is actually guilty.