## STATE EX REL. EUGENE CROSSLEY v. RALPH H. TAHASH.

116 N. W. (2d) 666.

July 27, 1962—No. 38,576.

*Eugene Crossley,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of the State Prison.

THOMAS GALLAGHER, JUSTICE.

Appeal by petitioner, Eugene Crossley, from an order of the Dis-

trict Court of Washington County denying his petition for a writ of habeas corpus.

In his petition for the writ, petitioner alleges that he is unlawfully imprisoned under a judgment of conviction and warrant of commitment which are invalid because of the court's acceptance of his plea of guilty to the crime of attempted robbery in the first degree when, at the time of his plea, his answers to the court's questions clearly indicated that because he had been intoxicated at the time of the crime he was not sure that he had committed it, and had entered his plea of guilty because of the inadequacy of counsel appointed to defend him.

The record discloses that on January 25, 1950, when petitioner entered his plea of guilty, he was represented by Tom E. Davis, a duly qualified and capable attorney appointed by the court to defend him. At that time the following proceedings took place:

"THE COURT: * * * Mr. Crossley, will you come forward? * * * There has been presented to the court an application, signed by you, in which you state that you have been charged with the crime of attempted robbery in the first degree, and that it is your wish to enter a plea of guilty to that charge. You also state that you have no funds with which to secure counsel. Are those statements true?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you have any property of any kind?

"THE DEFENDANT: No, I don't.

"THE COURT: The Court has acted on you[r] application and has made an order directing the county attorney to file an information against you, and also appointing Mr. Davis as attorney for you. Now have you talked over this matter with Mr. Davis?

"THE DEFENDANT: Yes, sir, I have.

"THE COURT: And have you been advised as to what your rights are in this matter?

"THE DEFENDANT: I have.

"THE COURT: And have you been advised as to what the consequences may be following a plea of guilty to this charge?

"THE DEFENDANT: Yes, sir.

"THE COURT: You may proceed with the arraignment.

"(Mr. Hulstrand [assistant county attorney] reads information)

"THE COURT: (to defendant) What say you to the information? Are you guilty or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: You may swear the defendant.

"EUGENE E. CROSSLEY

BEING FIRST DULY SWORN, WAS EXAMINED BY THE COURT AND TESTIFIED AS FOLLOWS:

"Q. What is your full and true name? A. Eugene Elmer Crossley.

\* \* \* \* \*

"Q. How old are you? A. Thirty-two.

\* \* \* \* \*

"Q. Have you ever been married? A. I was married in 1942; December.

"Q. And were you divorced? A. Yes, sir.

\* \* \* \* \*

"Q. Were there any children by that marriage? A. No, sir.

"Q. How much schooling have you had? A. High school.

"Q. And where did you graduate from high school? A. Minnesota State Reformatory.

\* \* \* \* \*

"Q. Are you addicted to the excessive use of intoxicating liquor? A. Yes, sir; I am a confirmed alcoholic.

\* \* \* \* \*

"Q. Have you had any military service? A. Canadian Army.

\* \* \* \* \*

"Q. And did you receive an honorable discharge? A. Yes, sir.

"Q. What rank did you have at the time that you were discharged? A. Corporal.

\* \* \* \* \*

"THE COURT: Mr. Hulstrand, will you inquire into the details of the offense?

"By Mr. Hulstrand.

"Q.   Now, on the evening of December 7th, 1949, you were then in the company of Frand LeRoy Penney, were you not? A.   Well, to be perfectly honest, I was drunk so much and everything is so vague I don't recollect exactly what I was doing. I don't remember anything vividly.

"Q.   Well, it was that night when you attempted to rob the filling station. You say things are so vague you don't remember? A.   I have a vague recollection of it.

"Q.   You were in company with someone?   A.   I think that I was. I am not positive. I think I am guilty. That's the reason I am pleading guilty.

"Q.   And you came to this filling station about 8:30 in the evening?   A.   I don't really remember.

"Q.   But it was in the evening. And at the time you came to the filling station both of you went in to the filling station? (no answer) The two of you went in there, into the filling station? A.   I think we did.

"Q.   And at that time you were armed with an automatic pistol? A.   Why, I really don't remember. To be honest about it, I don't.

"Q.   Well, do you remember that there was a fight there in the station? A.   Yes, I remember something vaguely. I remember, recall that vaguely.

"Q.   And you remember that during the course of this fight that you left the filling station and got away? A.   That I don't recall.

"Q.   You recall the fight? A.   I recall it afterwards, as I look back upon it, but I didn't remember at the time. That's what I mean.

"Q.   Now that you recall it, after you look back upon it, you recall there was a fight?   A.   I recall there was a fight.

"Q.   And you recall you had an automatic pistol? A.   No, I don't.

"Q.   What was the first time you recall anything after the fight? A.   I remember driving away in this car.

"Q.   You remember driving away from the station in the car? A.   I cam[e] to myself because I had the window open and the wind blowing back in my face. I don't know how far I drove, before I gained my senses.

"Q. You realized you were running away from an attempted robbery? A. That's right.

"Q. And up to the time of the robbery how far can you remember? When does your memory fail you? Were you drinking at the time? A. I had been drinking for over a period of—better then three weeks, in fact, drinking incessantly.

"Q. Do you remember when you started out for this part of the State? A. No, I don't recall that either. I can't recall the dates.

"Q. You do recall that you had someone with you when you were in the station, there was a fight and that you were running away from an attempted robbery? A. Yes, I remember that as I recall.

"Q. During the fight were you hit or struck by anything, or what? A. I don't think so. Yes, I had a scratch up here,—I remember that—on my eye.

"Q. And after the robbery where did you go? A. Pardon?

"Q. Where did you go then after that? A. I went to Milwaukee.

"Q. To Milwaukee, Wisconsin? A. That's correct.

"Q. Directly from this place? A. Directly.

"Q. You didn't stop except for eating. And whose car were you driving? A. Stolen car. I don't know whose car it was.

"Q. The two of you stole a car somewhere? A. Minneapolis.

\* \* \* \* \*

"Q. And you recall that was the car that you were in when you left the scene of this robbery. A. I think so, I don't really know.

"Q. From Milwaukee where did you go? A. I don't know where I went.

"Q. You don't remember. Do you remember where you were arrested? A. Yes, Carthage, Missouri.

"Q. Carthage, Missouri. A. That's right.

"Q. And how long was that after the flight to Milwaukee? A. I think it was January some time. No. No, it wasn't. It was December. It was before Christmas.

\* \* \* \* \*

"Q. (By the Court) Did you have in your possession a pistol at

any time before the robbery, or attempted robbery? A. I don't remember when I got the pistol or how I got it.

"Q. Do you know what became of it? A. No, I don't. I couldn't find it. It wasn't in my clothing or it wasn't in the car when I was picked up.

\* \* \* \* \*

"Q. Do you recall ever having owned a 25 calibre automatic pistol? A. I don't really recall how I got the pistol or had it.

\* \* \* \* \*

"Q. I will ask you now concerning the three prior convictions about which you have informed the court, the one in 1935, the one in 1939, and one in 1944. As to each one of those convictions, at the time you perpetrated those offenses what was your state of sobriety or otherwise? A. I was drunk at the time.

\* \* \* \* \*

"MR. HULSTRAND: I have an information as to previous convictions.

"(Mr. Hulstrand reads information of prior convictions.)

"THE COURT: (to defendant) Now, Mr. Crossley, you have just heard the county attorney read to you the information charging you with three prior felony convictions. You have a right to be tried as to the truth of these accusations. The court will ask you now whether or not you admit that the convictions as set forth in the information just read to you are true and correct. Is it true that you have been three times convicted upon the charges and receive[d] the sentence as set forth in the information which the county attorney has just read to you?

"THE DEFENDANT: Yes, sir.

"THE COURT: You, Eugene E. Crossley, have pleaded that you are guilty of having committed the crime of attempted robbery in the first degree, as that crime is specifically set forth in the information to which you have pleaded. Upon your plea of guilty, it is considered and adjudged that you, Eugene E. Crossley, are guilty of having committed the offense charged in the information to which you have pleaded, and it is considered and adjudged that you be and hereby are convicted of said offense as charged in the information.

"It is further made to appear and found to be true that you have heretofore been three times convicted of a felony.

"It is therefore ordered, adjudged and decreed that as punishment therefore you be committed to and confined in the State Prison at Stillwater, there to remain until you shall be thence discharged by due authority in due course of law, for a period not less than fifteen years nor more than forty years."

The petition does not state that petitioner was not guilty of the crime charged in the information but in substance sets forth that because petitioner did not have any recollection of whether he had committed it, the court should have withdrawn his plea of guilty and ordered him to stand trial.

■ In State ex rel. Norgaard v. Tahash, 261 Minn. 106, 110 N. W. (2d) 867, defendant advanced claims similar to those here. There, after entering a plea of guilty to the crime of assault in the second degree, and before sentence was imposed, defendant stated to the court on several occasions that he had no definite recollection of the events which comprised the crime described. He also informed the court that on the night of the crime he had gone to bed about 2:30 or 3 a. m. and could not recall anything that had occurred at any time during that night. Both the court and defendant's counsel there advised him that he could withdraw his plea of guilty and enter one of not guilty and stand trial, but at all times he replied that he preferred to enter a plea of guilty. There, this court, in reversing two orders of the District Court of Washington County discharging defendant on the ground that due process had been denied him, stated (261 Minn. 111, 110 N. W. [2d] 871):

"* * * It seems clear * * * that the petitioner was adequately represented in court by his attorney. * * * he was told that he was entitled to a trial by a jury of 12 people, * * * his attorney advised him that he did not need a defense as an absolute prerequisite to a trial by jury and that he could insist upon the state proving its charge beyond a reasonable doubt * * * and that if he wished to plead not guilty the attorney would conduct the trial of his case. * * *

\* \* \* \* \*

"If we were to say under the record here that reversible error was committed, we would be ruling in effect that no matter how obvious the crime or how anxious the accused might be to plead guilty, if he said he did not recall what happened, the court should not under any conditions accept such a plea. We are not prepared to go that far with a record such as we have before us. Rather it seems possible to us that the petitioner's persistent desire to plead guilty, after repeated advice by his attorney and the court as to his constitutional rights, may have been based on some expectation on his part that even though he plead not guilty and was tried before a jury he would still be convicted."

■ In State ex rel. Dehning v. Rigg, 251 Minn. 120, 86 N. W. (2d) 723, again claims were presented similar to those here. There the defendant was charged with unlawfully deserting his wife with intent to wholly abandon her. There, upon the advice of counsel, he entered a plea of guilty to the charge. Before sentence was imposed upon him, the following transpired (251 Minn. 121, 86 N. W. [2d] 725):

"Q. [By the court] And when you left Thurley on February 26th of this year, while she [defendant's wife] was pregnant, you intended to abandon her?

"A. I don't know, Your Honor, whether I intended to abandon her or not. We had been in a big argument, been arguing for a week. When I left that morning I was going to Minneapolis to see if I could raise some money to keep the business going. * * * when I left she said that if I left and went to Minneapolis that day, I didn't have to come back. The more I thought about it the madder I got. I got drunk and kept going [to Arizona]."

There, in holding that the trial court should not have accepted defendant's plea of guilty but should have ordered him to stand trial, this court stated (251 Minn. 122, 86 N. W. [2d] 725):

"* * * Under those circumstances, his plea of guilty, qualified as it was, should not have been accepted. At that stage of the proceeding, before sentence was imposed, petitioner's attorney, in view of his

client's inconsistent statements, should have intervened and asked the court for additional time for a consultation with his client in order to try to ascertain whether his conduct justified a plea of guilty and also to fully inform him of his legal rights. * * * the court, on its own initiative, should have instructed petitioner's attorney to have another consultation with his client and to inform him that, because of the doubt he expressed as to his intent, he could change his plea and have a jury trial if he so desired.

"* * * The accused is entitled to be advised as to all his legal rights under the law and facts involved, including the right to require the state to prove every material allegation of the offense charged.

"In our opinion the representation given the accused under the record here was so inadequate as to constitute a deprival of due process and render the court without jurisdiction to proceed with the arraignment. The issue was therefore properly raised in the habeas corpus proceeding.

"Therefore the trial court's order discharging the writ of habeas corpus is reversed and the writ reinstated.

"Petitioner is remanded to the custody of the sheriff of Lyon County, Minnesota, for such further proceedings as the local authorities of said county may consider proper in accordance with this opinion."

■ In the instant case the record discloses that before petitioner entered his plea of guilty he had conferred with his counsel, Tom E. Davis, and he had been advised as to the consequence which would follow such a plea. He then stated that while he did not remember anything vividly he did have a vague recollection of the attempted robbery with which he was charged; that he "thought" he was guilty and that that was the reason he was pleading guilty; that he remembered being in a fight in the filling station which was being robbed; that he recalled fleeing from the station and from the attempted robbery; and that he remembered that after the robbery he had gone to Milwaukee in a stolen car. In substance, he admitted that at the time of the robbery he had a pistol but that he could not remember where or how he got it or what had become of it. All such vagueness he attributed to excessive alcoholism at the time.

■ It is of significance that petitioner was convinced of his own guilt, even though, because of his use of alcohol, he had no definite recollection of the details of the crime. It also appears from the record that no one coerced him into making a plea of guilty or used force or persuasion of any kind upon him for such purpose. Under all these circumstances, we are of the opinion that the principles set forth in State ex rel. Norgaard v. Tahash, *supra,* are applicable, as well as the court's statement therein to the effect that, if claims such as those presented here were to be sustained, it would follow that no matter how obvious the commission of a crime by a defendant might be, and no matter how anxious he was to enter a plea of guilty thereto, his unsupported statement that he could not recall what happened in detail would require the trial court to refuse such plea and order him to stand trial. We indicated in that case that we were not prepared to go that far, and we think the limitation thus expressed is applicable here.

Affirmed.