*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0052**

Jason Mark Musburger, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 1, 2016
Affirmed
Bratvold, Judge**

St. Louis County District Court
File No. 69HI-CR-10-170

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Brian D. Simonson, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Frank Richard Gallo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant Jason Musburger challenges the denial of his petition for postconviction relief, arguing that the district court erred in finding his petition untimely because it was

filed after the two-year deadline. Musburger argues that the interests-of-justice exception applies because, while in prison, he did not receive correspondence from his appellate attorney and was unaware that two of his pleas were inaccurate, which he contends prevented him from filing within the two-year statutory time limit. Because we conclude that Musburger's petition does not satisfy the interests-of-justice exception, we affirm the district court's denial of his untimely petition.

**FACTS**

On March 6, 2010, Musburger was arrested and charged for shooting three people, C.N., E.W., and L.E., in a bar in Chisholm. C.N. and L.E. suffered injuries and E.W. was killed. Two years later, Musburger entered *Norgaard* pleas[1] to three separate offenses: attempted first-degree murder (Count 2), attempted second-degree murder (Count 4), and second-degree intentional murder (Count 8).

At the plea hearing, Musburger testified to the facts of the incident. Musburger's testimony is somewhat unclear, in part because Musburger suffered a head injury during the incident, impairing his memory. Musburger's testimony included the facts he recalled as well as the evidence that the state would offer on each charge if he decided to go to trial.

---

[1] At the plea hearing, the parties referred to Musburger's pleas as *Alford* pleas. *See North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970) (holding that a district court may accept a guilty plea even though the defendant claims innocence if there is enough evidence to support a guilty verdict and if the plea is voluntarily and knowingly entered); *State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977) (approving *Alford* pleas in Minnesota courts). On appeal, the parties refer to Musburger's pleas as *Norgaard* pleas. *See State ex. rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961) (affirming the district court's acceptance of a guilty plea where the defendant asserted inability to remember the circumstances of the offense). Both types of pleas are valid in Minnesota and, based on the appellate briefs, this court will review Musburger's pleas as *Norgaard* pleas.

Musburger testified that, when he saw his ex-wife at the bar, she was sitting with male companions, C.N. and another male. He also admitted that witnesses would testify that he made a few comments, which escalated into a verbal and physical confrontation with the male companions, including C.N., and that C.N. ultimately restrained Musburger on the floor.

Musburger testified that he was very upset after the confrontation, went home, retrieved two loaded guns, returned to the bar, approached his ex-wife's table, and pulled out a gun. Musburger acknowledged that the state had witnesses who would testify that he approached C.N. with a "determined look." And Musburger acknowledged that witnesses would testify that someone yelled "gun!," at which point C.N. reached toward Musburger and the gun went off twice. Musburger testified that both shots hit C.N. and "caused significant and serious injuries to him."

Musburger also acknowledged that another victim, L.E., would testify that "he was trying to hold the gun up in the air and that [Musburger was] pulling it down and when [Musburger] got it down by his body that's when [Musburger] pulled the trigger and [the bullet] went through [L.E.'s] shoulder."

Regarding the third victim, Musburger admitted that the gun he brought into the bar discharged while he was holding it, killing E.W. Musburger also acknowledged that the state would offer testimony about three key facts related to E.W.'s death. First, witnesses would testify that "immediately after shooting [C.N.] twice, [Musburger] pointed the gun across the table and shot [E.W.]." Second, witnesses would testify that Musburger's bullet "entered and penetrated the trunk of [E.W.], leading to his death." Third, witnesses would

3

testify that E.W. physically resembled one of the men with whom Musburger fought earlier.

Musburger's testimony also covered his state of mind. According to Musburger, he had not intended to shoot anyone but had intended to kill himself in front of his ex-wife. Musburger testified that he shot the victims only because C.N. intervened and the gun discharged during the struggle. Yet Musburger also testified that the state had obtained a statement from him soon after the shooting; in Musburger's statement, he said that he came back to the bar because he "wanted to humiliate the person who had pinned [him] down earlier." Musburger also testified that he had been drinking and taking prescription pain medication that evening, however, he had his "wits" about him. Musburger did not assert an intoxication defense.

For each of the three counts, Musburger testified that the state had "substantial and compelling evidence that would "result in the likelihood of a conviction . . . if the jury believed the state's version of events." Also at the plea hearing, Musburger waived his right to a jury trial and submitted a written petition to plead guilty under Rule 15 of the Minnesota Rules of Criminal Procedure.

Based on Musburger's testimony, the district court accepted Musburger's *Norgaard* pleas to all three counts, finding "that there is a strong likelihood that Mr. Musburger would be found guilty of the three charges that he's pled guilty here to today." When the parties returned for a sentencing hearing, the district court imposed a total sentence of 486 months for all three convictions.

Nearly three years after his plea hearing, Musburger filed a petition for post-conviction relief in September 2015, requesting plea withdrawal for all three convictions. He argued that his pleas to attempted second-degree murder (Count 4) and second-degree murder (Count 8) were inaccurate because of "an insufficient acknowledgement of guilt" and that all three pleas were involuntary and coerced because of the ineffective assistance of his trial counsel.

To support his petition, Musburger attached an affidavit containing multiple allegations regarding his trial counsel. In summary, Musburger stated the following:

> In retrospect I understand that the above factors and the pressure I felt in believing I would not receive a fair trial in my small community were all part of a pattern leaving me to feel I had no choice but to plead guilty to criminal activity beyond that which I actually committed.

Musburger's petition did not address the petition's timeliness or argue that an exception to the deadline applied. By letter, the district court offered Musburger the opportunity to address the timeliness issue. Musburger responded, arguing that his petition was not untimely because the interests-of-justice exception applied. *See* Minn. Stat. § 590.01, subd. 4(b)(5) (2014) (stating that a court may hear a petition for postconviction relief outside the two-year time limit if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice"). Musburger contended that if the district court granted an evidentiary hearing, he could establish that he did not receive timely correspondence from the public defender's office and was unaware that his *Norgaard* pleas were deficient.

The district court denied Musburger's petition without an evidentiary hearing, concluding that the petition was untimely and Musburger did not establish that the interests-of-justice exception applied. The district court concluded that even if Musburger could establish that he did not receive correspondence from his appellate counsel or that he was unaware his pleas were inaccurate, these would not be injustices that prevented him from filing his petition within the statutory time period. The district court noted that "[t]hey may be explanations for his failure to timely file, but they did not prevent him from filing within the two year deadline." The district court also noted that "the plea agreement and sentence was very fair and favorable to the defendant" and speculated that if Musburger had gone to trial, he would have likely been convicted of additional charges and served a much longer sentence, possibly life without release. Musburger appeals.

## DECISION

On appeal, Musburger argues that the district court erred because his petition revealed a "manifest injustice" that should trigger the interests-of-justice exception for two reasons: (1) at an evidentiary hearing, he could prove that his failure to receive legal correspondence from the public defender's office meant that a state actor prevented him from diligently pursuing relief in a more timely fashion, *see Sanchez v. State*, 816 N.W.2d 550, 562 (Minn. 2012), and (2) he had inefficient assistance of counsel at the plea hearing, leading to a coerced plea. The state responds by noting that Musburger's claims are unsubstantiated and that he did not provide an affidavit to support his allegations. The state also notes that the caselaw on the interests-of-justice exception does not support Musburger's arguments.

6

We review the denial of a postconviction petition for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). An abuse of discretion occurs when a postconviction court's decision "is based on an erroneous view of the law or is against logic and the facts in the record." *Id*. (quotation omitted). Postconviction courts are required to hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014); *accord Roby v. State*, 808 N.W.2d 20, 24 (Minn. 2011). "An evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested." *Davis v. State*, 784 N.W.2d 387, 392 (Minn. 2010).

### Plea Withdrawal and Postconviction Relief

"At any time" a district court "must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the [district] court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. When a motion to withdraw a guilty plea is made after sentencing, it must be raised in a petition for postconviction relief and is therefore subject to the timeliness requirements in Minn. Stat. § 590.01, subd. 4(a)-(c) (2014). *Lussier v. State*, 821 N.W.2d 581, 586 n.2 (Minn. 2012). A petition for postconviction relief must be filed within two years of "the entry of judgment of conviction or sentence if no direct appeal is filed." Minn. Stat. § 590.01, subd. 4(a)(1).

An otherwise untimely petition may proceed if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice."

7

*Id.*, subd. 4(b)(5) (2014). The interests-of-justice exception applies only "in exceptional situations." *Gassler v. State*, 787 N.W.2d 575, 586 (Minn. 2010). To satisfy the interests-of-justice exception, "a claim must have substantive merit and the defendant must not have deliberately and inexcusably failed to raise the issue on direct appeal." *Id.*

The interests-of-justice exception applies when an injustice caused the petitioner to miss the two-year filing deadline. *Sanchez*, 816 N.W.2d at 557. The interests of justice relate to the reason the petition was untimely, not the substantive claims advanced in the petition. *Id.*; *see also* Minn. Stat. § 590.01, subd. 4(c) (providing that petitions invoking the interests-of-justice exception "must be filed within two years of the date the claim arises").

### Counts 4 and 8: Failure to Receive Correspondence from Appellate Counsel and Sufficiency of Factual Basis

Musburger argues that his *Norgaard* pleas to Counts 4 (second-degree attempted murder of L.E.) and 8 (second-degree intentional murder of E.W.) were inaccurate because he did not at any time "acknowledge intent to effect the death of a human being nor did he acknowledge that a jury hearing the evidence would likely convict him beyond a reasonable doubt." The district court declined to consider Musburger's arguments because they were untimely. The issue on appeal is whether the district court erred in denying his petition without an evidentiary hearing because "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." *See* Minn. Stat. § 590.01, subd. 1; *Roby*, 808 N.W.2d at 24. Musburger asserts two reasons he is entitled to relief.

8

First, Musburger "claim[s] he did not receive various correspondence from the Office of the Appellate Public Defender regarding his case." Accordingly, he contends that "a State actor or some other paramount authority prevented him from diligently pursuing relief in a more timely fashion." The interests-of-justice exception may apply where a petitioner fails to receive necessary legal materials in time to pursue his claims. *See Rickert v. State*, 795 N.W.2d 236, 242 (Minn. 2011) (concluding that the exception applied where the petitioner contacted the public defender's office "well within the original statute of limitations" but the transcript did not arrive until two days before the deadline and the petitioner filed a motion to extend time to file).

Musburger's claim fails because he did not support his petition with any details regarding the content of the correspondence, the reason he did not receive it, or the date he eventually became aware of the correspondence. Nor does Musburger offer any explanation regarding how his failure to receive the correspondence supports his claim that a state actor prevented him from diligently pursuing relief in a more timely fashion. Because Musburger failed to allege facts sufficient to entitle him to the interests-of-justice exception, the district court did not err in denying his petition without an evidentiary hearing. *See Davis*, 784 N.W.2d at 392 ("Allegations in a postconviction petition must be more than argumentative assertions without factual support." (quotation omitted)).

Second, Musburger contends that the interests-of-justice exception should apply because "he personally was unaware that at least two of his *Norgaard* pleas were incomplete under caselaw, and that he did not know, nor objectively could he have reasonably known, of the errors in the case."

9

Minnesota courts have rejected similar arguments from petitioners who have contended that their level of education and pro se status prevented them from filing in a timely manner. *See, e.g.*, *Erickson v. State*, 842 N.W.2d 314, 319 (Minn. 2014) (holding that the petitioner's pro se status and limited educational attainment did not prevent him from filing in a timely manner). An objective standard determines whether a claim has arisen under the interests-of-justice exception. *Sanchez*, 816 N.W.2d at 559 ("Our case law has clearly established that we assess when a claim arises or accrues based on an objective 'knew or should have known' standard."). Under the objective standard, it is irrelevant whether Musburger personally knew that his pleas were deficient, and he does not support his assertion that he reasonably could not have known.

Finally, the interests-of-justice exception requires that a petition have substantive merit. Having examined Musburger's petition, we note that he is very unlikely to prevail on the merits. The plea-hearing transcript is extensive and includes both significant direct and cross-examination testimony supporting Musburger's *Norgaard* pleas. He does not fully acknowledge his guilt on all three charges, in part because of his impaired memory. But this is not required because his pleas were a hybrid between *Norgaard* and *Alford/Goulette* pleas. *See State v. Ecker*, 524 N.W.2d 712, 716-17 (Minn. 1994) (explaining that a district court may accept a *Norgaard* or *Alford/Goulette* plea if there is an adequate factual basis and the defendant understands his or her rights). Instead, Musburger acknowledged the state's evidence and that the "evidence would have been sufficient for a jury applying a reasonable doubt standard to find [him] guilty of the

offenses [he] entered guilty pleas to." Musburger's testimony acknowledges the state's evidence and shows an adequate factual basis for Musburger's pleas. *See id.*

Because Musburger did not allege sufficient facts to establish a basis for relief, we conclude that the district court did not err in denying this portion of his petition without an evidentiary hearing.

### *Counts 2, 4, and 8: Ineffective Assistance of Counsel*

Musburger argues that all three of his *Norgaard* pleas were involuntary because they were coerced by his trial counsel, who also provided ineffective legal assistance. Musburger contends that these facts should trigger the interests-of-justice exception.

The Minnesota Supreme Court has held that "the interests-of-justice exception is triggered by an injustice that *caused* the petitioner to miss the primary deadline in subdivision 4(a), not the *substance* of the petition." *Sanchez*, 816 N.W.2d at 557. The supreme court further commented that,

> When the only injustice claimed is identical to the substance of the petition, and the substance of the petition is based on something that happened before or at the time a conviction became final, the injustice simply cannot have caused the petitioner to miss the 2–year time limit in subdivision 4(a), and therefore is not the type of injustice contemplated by the interests-of-justice exception in subdivision 4(b)(5).

*Id.*

Here, Musburger's ineffective-assistance-of-counsel claims are based on conduct and events that occurred on or before his plea hearing. Accordingly, even if believed, these claims could not have caused him to miss the two-year postconviction deadline under Minnesota caselaw. *See, e.g.*, *id.* (rejecting similar ineffective-assistance-of-counsel

11

claim). Because Musburger does not allege any other basis on which the interests-of-justice exception might apply, we conclude that the district court did not err in denying his petition for postconviction relief without an evidentiary hearing.

**Affirmed.**