*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1349**

State of Minnesota,
Respondent,

vs.

Delilah Golden Metoxen,
Appellant.

**Filed May 28, 2024
Affirmed
Cochran, Judge**

St. Louis County District Court
File No. 69DU-CR-20-2545

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kimberly J. Maki, St. Louis County Attorney, Jonathan D. Holets, Deputy County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Max B. Kittel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this appeal from a probation-revocation decision, appellant argues that the district court abused its discretion by revoking appellant's probation because its finding that the need for confinement outweighs the policies favoring probation is not supported by the record and is based on an erroneous view of the law. In the alternative, appellant argues that the district court violated her right to due process by failing to give her the opportunity to address the court before executing her sentence. Finally, appellant argues that the district court abused its discretion by imposing a sentence at the top of the presumptive range instead of a sentence in the middle of the presumptive range. We affirm.

**FACTS**

In August, 2020, respondent State of Minnesota charged appellant Delilah Golden Metoxen with (1) one count of first-degree burglary in violation of Minnesota Statutes section 609.582, subdivision 1(a) (2020); (2) two counts of first-degree burglary in violation of Minnesota Statues section 609.582, subdivision 1(b) (2020); (3) one count of first-degree burglary in violation of Minnesota Statutes section 609.582, subdivision 1(c) (2020); and (4) two counts of first-degree aggravated robbery in violation of Minnesota Statutes section 609.245, subdivision 1 (2020). The state's complaint alleged that Metoxen broke into a stranger's apartment, attempted to steal the apartment resident's property, and assaulted the resident and the resident's daughter in the presence of the resident's grandchild.

In February, 2022, Metoxen pleaded guilty to one count of first-degree burglary under section 609.582, subdivision 1(b), pursuant to a plea agreement with the state.[1] In exchange for Metoxen's guilty plea, the state dismissed the remaining charges, withdrew its motion for an aggravated sentence, and agreed that Metoxen could be released to an inpatient drug-treatment program while she awaited sentencing. The plea agreement also anticipated that Metoxen would argue for a downward dispositional departure at sentencing unless she absconded from treatment, in which case she would forfeit her right to seek a departure and would receive a sentence within the presumptive sentencing range. During the plea hearing, defense counsel asked the district court to allow Metoxen to travel to Wisconsin to clear a probation-violation warrant before reporting for treatment. Following Metoxen's guilty plea, the district court ordered a presentence investigation report (PSI) and released Metoxen with the understanding that she would travel to Wisconsin to clear the probation-violation warrant before returning to Minnesota for treatment.

Metoxen traveled to Wisconsin to clear the probation-violation warrant but was mistakenly released "straight to the streets" of Wisconsin instead of to the Minnesota treatment center. Metoxen relapsed and did not return to Minnesota for treatment. At a presentencing hearing, defense counsel requested a continuance to allow Metoxen to enter treatment prior to sentencing. The state agreed, and the district court continued the matter and ordered Metoxen to be screened for drug court.

---

[1] Metoxen pleaded guilty pursuant to *State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867 (Minn. 1961), which allows a defendant to plead guilty even if they do not remember essential elements of the offense as long as the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction.

While awaiting sentencing, Metoxen participated in several drug-treatment programs, with mixed results. Metoxen first attempted to complete a medium-intensity drug-treatment program, but she relapsed and was transferred to a high-intensity inpatient drug-treatment program. After completing the high-intensity inpatient program, Metoxen began a high-intensity outpatient program, but she again relapsed and returned to the high-intensity inpatient program. By the time of sentencing, Metoxen had completed the high-intensity inpatient program for a second time and was participating in a different outpatient drug-treatment program.

At sentencing, defense counsel moved for a downward dispositional departure based on Metoxen's particular amenability to probation and to treatment in the community. Defense counsel argued that Metoxen had taken responsibility for her actions by pleading guilty and had expressed remorse for the harm she caused the victims. Defense counsel also noted that Metoxen had the support of her mother and grandmother, who were tribal elders, and asserted that the drug court would consider admitting her if she resided in the community.

The state and probation services opposed the motion, and the state asked the district court to impose a sentence within the presumptive sentencing range. The state argued that Metoxen was not particularly amenable to probation based on the severity of Metoxen's offense, her "addiction problems," and her previous convictions of burglary and theft. The state also noted that Metoxen had been denied admission to drug court, contrary to defense counsel's assertion. In the event that the district court chose to grant Metoxen's motion for a downward dispositional departure, the state asked the district court to impose a stayed

4

sentence at "the upper range of the [presumptive] sentence as a way to provide even further incentive for [Metoxen]" to remain sober.

Metoxen also spoke at the sentencing hearing. Metoxen stated that she took "full responsibility" for her actions and felt "really bad[ly] for what happened." Metoxen also stated that she was "trying [her] hardest" and was making progress in treatment.

The district court expressed reservations about Metoxen's ability to remain sober but ultimately granted the downward dispositional departure. The district court acknowledged that Metoxen had taken responsibility for her actions, had completed multiple high-intensity drug-treatment programs, was "making some progress" in drug treatment, and had the support of her family. Based on these circumstances, the district court found that Metoxen was particularly amenable to treatment and probation. The district court also granted the state's request for a top-of-the-box stayed sentence. Accordingly, the district court sentenced Metoxen to 81 months in prison, stayed for four years with conditions.

Approximately three months later, Metoxen's probation officer filed a probation-violation report alleging that Metoxen had violated four conditions of her probation, which required her to: (1) contact her probation officer as directed; (2) notify her probation officer within 72 hours of contact with law enforcement; (3) notify her probation officer within 72 hours of a change to her address, employment, or telephone number; and (4) complete treatment programming and aftercare recommendations. Based on these alleged violations, the probation officer recommended revoking Metoxen's probation and executing her sentence.

5

At her probation-violation hearing, Metoxen admitted to all four alleged probation violations. The district court then found the violations were intentional and inexcusable. It also scheduled a dispositional hearing and ordered Metoxen to be screened for drug court.

At the dispositional hearing, defense counsel asked the district court to reinstate Metoxen on probation. Defense counsel acknowledged that Metoxen had previously been rejected by the county drug court but nevertheless asserted that the drug court would accept her if she remained in the community. Defense counsel also emphasized that Metoxen had the support of her family, intended "to live at home at an address that's well within the high surveillance area of the drug court," and would participate in the drug court's "vigorous program."

The state asked the district court to execute Metoxen's sentence, as did the probation officer. In support of its position, the state highlighted the seriousness of Metoxen's probation violations and the severity of the underlying offense. The state also asserted that Metoxen would be best served "by going to a secure facility, [prison], and taking advantage of whatever is available to her there." The probation officer noted that Metoxen had violated the conditions of her probation "within a couple of months after receiving a dispositional departure" and emphasized that Metoxen had not been able to maintain her sobriety despite her participation in multiple community-based drug-treatment programs.

The district court denied defense counsel's request to reinstate Metoxen on probation and executed Metoxen's sentence. The district court described Metoxen's offense as "serious" and "violent" and noted that it had granted Metoxen's motion for a downward dispositional departure against the recommendation of the state and the

6

probation officer. The district court also emphasized that Metoxen had "a history of not being successful on probation" and of absconding from custody. The district court therefore found that treatment could be provided only in a correctional setting. The district court also explained: "There have been multiple efforts in this case, to give [Metoxen] opportunities to get the treatment that she needs, to stay in contact with probation, I agree with [the prosecutor] that it would unduly depreciate the seriousness of this offense [to reinstate Metoxen on probation]." Accordingly, the district court revoked Metoxen's probation and executed her 81-month prison sentence. Before executing the sentence, the district court did not affirmatively ask Metoxen if she wanted to speak on her behalf, and Metoxen did not request an opportunity to do so.

Metoxen appeals.

## DECISION

Metoxen challenges the district court's decision to revoke her probation and execute her sentence on several grounds. We consider each challenge in turn.

## I. The district court did not abuse its discretion by revoking Metoxen's probation.

Metoxen first argues that the district court abused its discretion by revoking her probation. We disagree.

When an offender with a stay of execution admits a probation violation, a district court may either continue the offender on probation or revoke probation and execute the sentence. Minn. R. Crim. P. 27.04, subd. 3(2)(b)(iv)-(v); *see also* Minn. Stat. § 609.14, subds. 1, 3 (2022 & Supp. 2023). Before a district court may revoke probation, the court

7

must find that: (1) the probationer violated a specific condition of their probation; (2) the violation was intentional or inexcusable; and (3) the "need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). These findings are commonly known as the *Austin* factors. In making these findings, the district court "must seek to convey [its] substantive reasons for revocation and the evidence relied upon." *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). A district court's decision to revoke probation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted).

Although a district court must make the necessary findings on the *Austin* factors to revoke probation, a district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Lopez*, 988 N.W.2d 107, 122 (Minn. 2023) (quotation omitted).

Metoxen challenges only the district court's finding on the third *Austin* factor—that the need for her confinement outweighs the policies favoring probation. When determining whether the third *Austin* factor is satisfied, the district court should consider whether: (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment which can most effectively be provided if [s]he is confined"; or (3) "it would unduly depreciate the

8

seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (quotation omitted). These considerations are known as the *Modtland* subfactors. *State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023). A district court need only find that one of the *Modtland* subfactors favors confinement for the third *Austin* factor to be satisfied. *Id.*

In revoking Metoxen's probation, the district court found that (1) Metoxen is in need of treatment that can only be provided in a correctional setting and (2) failure to revoke Metoxen's probation "would unduly depreciate the seriousness of *this offense*." (Emphasis added.) Metoxen argues that the district court's first finding is "unsupported by the record" and that its second finding is based on "an erroneous view of the law."

Because only one *Modtland* subfactor is necessary to revoke probation, we limit our analysis to the second subfactor—whether the offender is in need of treatment that can most effectively be provided if the offender is confined. *See Modtland*, 695 N.W.2d at 607. When discussing this subfactor, the district court explained that Metoxen has had "multiple . . . opportunities to get the treatment that she needs" but has absconded from custody and has not been successful on probation. The district court then found that, "in order for [Metoxen] to get treatment, it can only be provided in a correctional setting."

Metoxen contends that the district court abused its discretion by finding that she needs treatment that can only be provided in a correctional setting because there is "no evidence in the record to support or even suggest that there are no other treatment programs available in the community." This argument is unavailing.

9

The district court's finding that Metoxen is in need of treatment that can only be provided in a correctional setting is supported by the law and the record. In *Austin*, the supreme court upheld the district court's finding that the appellant needed treatment that could only be provided in a correctional setting because the record showed that "appellant ha[d] been offered treatment but ha[d] failed to take advantage of the opportunity or to show a commitment to rehabilitation." *Austin*, 295 N.W.2d at 251. Likewise, here, the record shows that Metoxen had the opportunity to participate in several community-based drug-treatment programs while on probation but that she absconded from one treatment program and failed to complete two others. Thus, as in *Austin*, Metoxen failed to show a commitment to rehabilitation. *See id.* We therefore conclude that the district court did not abuse its discretion by finding that Metoxen is in need of treatment that can only be provided in a correctional setting and by revoking Metoxen's probation on that basis. *See id.*; *Lopez*, 988 N.W.2d at 122.

**II.    The district court did not violate Metoxen's due-process rights by not offering her an opportunity to address the district court before executing her sentence.**

Metoxen next argues that the district court violated her right to due process by not offering her an opportunity to address the district court before it executed her sentence. The United States and Minnesota Constitutions afford criminal defendants due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *State v. Krause*, 817 N.W.2d 136, 145 (Minn. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "Whether a defendant has been denied due process

of law is a question of law that we review de novo." *State v. Beaulieu*, 859 N.W.2d 275, 280 (Minn. 2015).

Because Metoxen did not raise her due-process argument in district court, we must first consider whether Metoxen has forfeited this argument on appeal. *See id.* at 278. A defendant may forfeit a constitutional right by failing to assert it before the district court. *See id.* The forfeiture doctrine "encourages defendants to object while in the district court so that any errors can be corrected before their full impact is realized." *Id.* at 279 (quotation omitted). But, because applying the forfeiture doctrine in "a rigid and undeviating" manner would be inconsistent with "the rules of fundamental justice," the "rules of criminal procedure provide appellate courts a limited power to correct errors that were forfeited." *Id.* (quotations omitted).

Specifically, Minnesota Rule of Criminal Procedure 31.02 provides: "Plain error affecting a substantial right can be considered by the court on motion for a new trial, post-trial motion, or on appeal even if it was not brought to the [district] court's attention." To support review, a criminal defendant must demonstrate that (1) an error occurred, (2) the error is plain, and (3) the error affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the defendant satisfies each of these three prongs, "we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (quotation omitted).

To meet the first prong of the plain-error test, Metoxen must establish that she (1) had a constitutional right to speak on her behalf immediately before the district court

executed her stayed sentence, and (2) the district court violated this right. *See Beaulieu*, 859 N.W.2d at 279.

Based on our review of the applicable caselaw, we conclude that Metoxen has not demonstrated that she was denied a constitutional right to be heard. The United States Supreme Court has held that there is no constitutional right to allocution. *Hill v. United States*, 368 U.S. 424, 428-29 (1962). And, like the United States Supreme Court, our supreme court has concluded that "the failure of a district court to ask a defendant represented by an attorney whether [s]he has anything to say before imposing a sentence is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Greer v. State*, 973 N.W.2d 918, 923 (Minn. 2022). Metoxen cites no binding authority to the contrary. In light of *Hill* and *Greer*, Metoxen cannot establish that she had a constitutional right to allocution at the probation-revocation hearing where her sentence was executed. *See id.* Accordingly, Metoxen's due-process argument fails to satisfy the first prong of the plain-error test and the argument is forfeited on appeal. *See Beaulieu*, 859 N.W.2d 278-80.[2]

---

[2] Although Metoxen has not established plain error, this opinion should not be read to suggest that, as a matter of practice, a district court may not ask a defendant if they wish to provide allocution at a probation-revocation hearing before the district court decides to execute a sentence.

**III. The district court did not abuse its discretion by imposing a "top-of-the-box" presumptive sentence.**

Finally, Metoxen argues that the district court abused its discretion by imposing a sentence at the top of the presumptive sentencing range instead of at the middle of the range. As an initial matter, we note that this issue is not properly before us because Metoxen did not raise the issue at the revocation hearing. *See State v. Fields*, 416 N.W.2d 734, 736 (Minn. 1987) (holding that a defendant may challenge an executed sentence on appeal from a probation-revocation decision if the defendant files a motion in district court "at the time of the revocation hearing"). Regardless, we are not persuaded that the district court abused its discretion by imposing a sentence at the top of the presumptive sentencing range.

The district court has broad discretion in the imposition of sentences, and we will reverse a sentencing decision only for an abuse of that discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). A district court abuses its discretion when its decision is contrary to law or against logic and the facts on record. *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). But a district court generally does not abuse its discretion when it imposes a sentence within the presumptive range. *See State v. Delk*, 781 N.W.2d 426, 428-29 (Minn. App. 2010), *rev. denied* (Minn. July 20, 2010).

The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses. Minn. Stat. § 244.09, subd. 5 (2020). To determine an offender's presumptive sentence, the district court locates the cell on the relevant sentencing grid that appears "at the intersection of the [offender's] criminal history score and the severity level" of the

offense. Minn. Sent'g Guidelines 2 (2020); *see* Minn. Sent'g Guidelines 4.A-C (2020). When the applicable cell contains three numbers, these numbers represent the offender's minimum presumptive sentence (the "bottom of the box"), maximum presumptive sentence (the "top of the box"), and presumptive fixed sentence (the "middle of the box"). *See* Minn. Sent'g Guidelines 4.A; *see also State v. Jackson*, 749 N.W.2d 353, 359 n.2 (Minn. 2008). "All three numbers in any given cell constitute an acceptable sentence based solely on the offense at issue and the offender's criminal history score—the lowest is not a downward departure, nor is the highest an upward departure." *Jackson*, 749 N.W.2d at 359 n.2. In other words, "any sentence within the presumptive range for the convicted offense constitutes a presumptive sentence." *Delk*, 781 N.W.2d at 428.

We will reverse a presumptive sentence only in "rare" cases, when compelling circumstances are present. *Delk*, 781 N.W.2d at 428 (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)). Compelling circumstances may exist when the defendant's "sentence is disproportionate to the offense or unfairly exaggerates the criminality of the defendant's conduct." *See State v. Vang*, 847 N.W.2d 248, 264 (Minn. 2014).

Metoxen contends that her 81-month, top-of-the-box sentence is "unreasonable, inappropriate, excessive, unjustifiably disparate, and not warranted by the findings of fact issued by the district court" because the district court imposed the sentence as a "motivation tactic." On this basis, Metoxen argues that the district court abused its discretion by imposing a sentence at the top of the presumptive sentencing range. Metoxen asserts that a 68-month, middle-of-the-box sentence "would more accurately reflect Metoxen's criminality." For the following reasons, we are not persuaded.

14

First, Metoxen's argument that the district court imposed a top-of-the-box presumptive sentence as a "motivation tactic" appears to be based on the *state's* argument at sentencing, rather than the *district court's* reasoning for imposing a top-of-the-box sentence. Thus, the record does not support Metoxen's assertion that the district court imposed a top-of-the-box sentence for the allegedly improper reason Metoxen identifies.

Second, Metoxen cites no authority to support her contention that imposing a top-of-the-box sentence as a "motivation tactic" to encourage compliance with probation conditions constitutes an abuse of discretion. Therefore, this court need not consider the argument on appeal. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection."); *see also State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (applying this aspect of *Schoepke*).

Finally, a district court is not required to explain its decision to impose a presumptive sentence. *See State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985). But even if it were, the district court's decision to impose a top-of-the-box sentence is supported by the record, which shows that Metoxen committed a violent offense that negatively affected multiple victims. Accordingly, the district court did not abuse its discretion by imposing a top-of-the-box sentence, and this is not the "rare" case requiring reversal of a presumptive sentence. *See Delk*, 781 N.W.2d at 428 (quotation omitted); *see also Vang*, 847 N.W.2d at 264.

**Affirmed.**